# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **CONNECTEL, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  2:04-CV-396-LED** |
| | § | **JUDGE DAVIS** |
| **CISCO SYSTEMS, INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA

WINSTEAD SECHREST & MINICK P.C.
Daniel F. Perez
Texas Bar No. 15776380
Mark Alan Calhoun
Texas Bar No. 03641500
Sanford E. Warren, Jr.
Texas Bar No. 20888690
5400 Renaissance Tower
1201 Elm Street
Dallas, TX  75270-2199
Telephone: (214) 754-5400
Fax: (214)745-5390


POTTER MINTON, P.C.
E. Glenn Thames, Jr.
Texas Bar No.  00785087
PO Box 359
500 Plaza Tower
110 N. College
Tyler, Texas 75702
(903) 597-8311
(903) 593-0846 (fax)
**ATTORNEYS FOR PLAINTIFF**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA

PLAINTIFF CONNECTEL, LLC ("ConnecTel" or "Plaintiff") files this Response in Opposition to Defendant Cisco System, Inc.'s ("Cisco" or Defendant") Motion to Transfer Venue to the Eastern District of Pennsylvania, and would respectfully show this Court as follows:

## I.    PRELIMINARY STATEMENT

Defendant fails to meet its burden to transfer this case under section 1404(a), as articulated by Eastern District of Texas precedent. Specifically, Defendant fails to demonstrate to this Court the required substantial evidence under the public and private interest factors to disturb Plaintiff's well-established right to choose its forum. In its Motion, Cisco fails to mention that it has been before this District on at least three previous occasions, including one action before *this Court* regarding router technology that is similar to the technology at issue in this case. Notably, Cisco previously chose this forum to adjudicate its own patents. Now that the shoe is on the other foot, Cisco seeks to evade this District's speed, efficiency, and expertise, and thereby deprive ConnecTel of the right to choose its forum.

Indeed, the Defendant does not dispute that venue is proper in this forum or that this forum is convenient.[1]    Instead, Defendant seeks to transfer to the Eastern District of Pennsylvania under the guise that it is in the interest of justice because Judge James Gardner merely construed two terms from one of the patents at issue in this case. Despite the Pennsylvania court's familiarity with one of the patents at issue – the 6,016,307 ("the '307 patent") – this case involves a different defendant, completely different products, and three

---

[1] *See, e.g.*, Defendant Cisco System, Inc.'s Answer and Declaratory Relief Counterclaims, ¶¶ 4-5 (Paragraph 4 states "Cisco admits that this Court has personal jurisdiction over this action and that Cisco has engaged in continuous and systematic activities within the State of Texas. ...") (Paragraph 5 states "Cisco admits that it is subject to personal jurisdiction and venue in this judicial district in this case, and that Cisco has an office within this district. ..."), attached hereto as Exhibit A.

distinct, separately issued patents. Indeed, the Pennsylvania court has no familiarity with the 6,144,641 ("the '641 patent), the 6,456,594 ("the '594 patent"), and the 6,473,404 ("the '404 patent"), the two hundred other claims, or with Cisco and its accused products. Therefore, Defendant's Motion should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.   Cisco Has Substantial Contacts with Texas, This District, and This Court.**

    **1.   Cisco has substantial contacts in this jurisdiction.**

This is a patent infringement case brought by ConnecTel LLC ("ConnecTel") against Cisco Systems, Inc. ("Cisco"). Cisco has substantial contacts in this jurisdiction. In fact, Cisco maintains six offices in Texas, located in Austin,[2] El Paso,[3] Houston,[4] Richardson,[5] Irving,[6] and San Antonio,[7] from which it actively sells infringing products. Notably, the Richardson office, located within this District, is considered a technological epicenter for Cisco's router technology.[8] In fact, in a prior proceeding, this District held that its designers, supervisors, developers, inventors, and witnesses who conceived and developed router technology reside and have been employed within this District.[9] Furthermore, Cisco's presence and business contacts in Pennsylvania are limited to three smaller, regional offices, in comparison to Cisco's six offices

---

[2] Cisco Systems, Inc., 12515 Research Blvd., Building 2, Austin, Texas 78759, Phone: 512-378-1000, Fax: 512-378-6099
[3] Cisco Systems, Inc., 5782 N. Mesa, El Paso, Texas 79912, Phone: 915-833-1558, Fax: 915-833-4827
[4] Cisco Systems, Inc., 9301 Southwest Freeway, Suite 660, Houston, Texas 77074, Phone: 713-448-1600, Fax: 713-448-1699
[5] Cisco Systems, Inc., 2200 East President George Bush Turnpike, Richardson, Texas 75082, Phone: 469-255-0000, Fax: 469-255-6799
[6] Cisco Systems, Inc., 7301 N. Hwy. 161, Suite 200, Irving, Texas 75039, Phone: 469-420-4700, Fax: 469-420-4799
[7] Cisco Systems, Inc., 85 N.E. Loop 410, Suite 620, San Antonio, Texas 78216, Phone: 210-357-2500, Fax: 210-357-2599.
[8] *See* Memorandum and Opinion in *Alcatel v. Cisco* on Motion for Severance and Transfer of Patent Claim ("*Alcatel*"), p. 9 (Brown, J.), attached hereto as Exhibit A.
[9] *See id.* Please note that Plaintiff is not conceding the issue of invention regarding the patents at issue in this case.

in Texas.[10]

### a.   *Cisco markets, advertises, and sells infringing router technology in this District.*

Cisco's activities are extensive in this District.  In fact, Cisco partners with both large and small retailers through which it markets, advertises, and sells its infringing products.  Over twenty-five retailers sell, market, and advertise Cisco's infringing products within this District alone,[11] and over two hundred retailers do so throughout Texas.[12]

### b.   *This District is the "center of gravity" for Cisco.*

There has recently been a judicial determination that this District is Cisco's "center of gravity."[13]  Specifically, Judge Brown ruled that Cisco's design, manufacture and distribution of its products and certain router technology within this District prompted this District's label of Cisco as "the center of gravity" for Cisco's patent infringement claims regarding router technology.[14]  That judicial determination confirms the well-established rule that "the place where the accused device was conceived, designed, manufactured, and distributed marks the 'center of gravity of patent infringement.'"[15]  Indeed, the Court's ruling laid a solid foundation for this District to become the center of gravity for Cisco's router technology.[16]

### 2.   <u>Despite the fact that Cisco previously chose to file a patent suit in this District, Cisco now attempts to deprive ConnecTel of that same well-established right to choose its forum.</u>

---

[10] *See* Declaration of Christy L. Naylor ("Naylor Decl."), ¶ 5 and accompanying exhibits, attached hereto as Exhibit B (stating Ms. Naylor gained this knowledge through Cisco's website located at www.cisco.com).

[11]*See* Naylor Decl., ¶¶ 6-15 and accompanying exhibits, attached hereto as Exhibit B.  According to its website, retailers carrying Cisco products are required to meet certain criteria, qualifying them as Cisco "partners." *Id.*  There are various levels of Cisco "partners," according to the criteria met and the services or products supplied, but Cisco clearly has supervisory approval. *Id.*

[12]*See* Naylor Decl., ¶¶ 6-15 and accompanying exhibits, attached hereto as Exhibit B.  The website also allows the user to search according to product or service fields.  The list of retailers provided in search results is complete with addresses, phone numbers, website links, and other contact information and descriptions. *See id.*

[13] *See Alcatel*, p. 9-10, Exhibit A.

[14] *See Alcatel*, p. 9-10, Exhibit A.

[15] *Alcatel*, p.8, Exhibit A.

[16] Upon information and belief, the activities in Cisco's Richardson office also involve the technology in this suit.

As this Court is well aware, Cisco has been a Defendant in the Eastern District of Texas in a technology suit involving its router technology.[17]  In fact, Cisco's antitrust counterclaims in that matter were severed into a separate, related case, which was assigned to *this Court*.[18]  Furthermore, Cisco also later *voluntarily* chose this District for the adjudication of its own patents.[19]  Inferentially, Cisco chose this Division's speed, efficiency, and expertise to enforce its own patents against Huawei – a Chinese company – rather than bringing suit in California. Cisco exercised its right to choose this District as its forum – and that's okay.[20]  Through the above cases, Cisco educated the Eastern District of Texas on its router technology, designs, development, and asserted patents, and, thus, on the relevant subject matter of this instant suit.[21]

By bringing its patent suit against Huawei in this District, Cisco acknowledged the efficiency, expertise, and convenience of this District.  Now that the shoe is on the other foot, Cisco seeks to evade this District's efficient docket and attempts to deprive ConnecTel of that same well-established right to choose its forum.  Taking Defendant's absurd argument to its logical conclusion, Defendant is eradicating a plaintiff's right to choose the forum and replacing established jurisprudence with a "first filing jurisdiction rule."[22]  Simply stated, if you follow Defendant's analysis, a plaintiff must litigate all patent infringement suits in one jurisdiction –

---

[17] *See Alcatel USA, Inc. v. Cisco Systems, Inc.*, No. 4:00-CV-199, 239 F. Supp. 2d 660 (E.D. Tex. 2002)(Brown, J).
[18] *See Cisco Systems, Inc. v. Alcatel USA, Inc.*, No. 4:03-CV-176, 301 F. Supp. 2d 599 (E.D. Tex. 2004) (Davis, J).
[19] *See Cisco Systems, Inc v. Huawei Technologies, Co., Ltd.*, 266 F. Supp. 2d 551 (E.D. Tex. 2003)(Ward, J.)
[20] Likewise, ConnecTel also freely exercised its right to choose this District as its forum.
[21] *See supra* notes 17-19.
[22] *See Cummins-Allison Corp v. Glory, Ltd.*, 2004 WL 1635534 (E.D. Tex. May 26, 2004)(Ward, J.) ("The plaintiff's decision to file suit in the Eastern District of Texas, Marshall Division, is entitled to substantial deference and 'should not be lightly disturbed.'") (citing *Nokia Corp. v. Buca, Inc.*, 2002 WL 1461913, *2 (N.D. Tex. 2002)); *LeDoux v. Isle of Capri Casinos Inc.*, 218 F. Supp. 2d 835, 837 (E.D. Tex. 2002); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 771-74 (E.D. Tex. 2000); *In re Triton Sec. Lit.*, 70 F. Supp. 2d at 678, 688 (E.D. Tex. 1999). *See also, Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981); *Menendez Rodriguez v. Pan American Life Ins. Co.*, 311 F.2d 429, 434 (5th Cir. 1962)(stating that "whether it be by transfer, order under the statute, or by dismissal under the doctrine of forum non conveniens, the plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed."); *National Group Underwriters, Inc. v. Southern Sec. Life Ins. Co.*, 2001 WL 1478800, *2 (N.D. Tex. 2001).

the jurisdiction in which a plaintiff chooses to file its first patent infringement action. This principle is contrary to the well-established rule in American jurisprudence that a plaintiff has the right to choose its forum and to not have that forum disturbed absent compelling circumstances.[23]

**B.      Cisco Infringes ConnecTel's Patented Intelligent Routing System.**

ConnecTel's principal, Allen Kaplan, is the co-inventor of the four revolutionary patents in suit: the '307 patent; the '641 patent; the '594 patent; and the '404 patent.[24] Kaplan assigned these patents to ConnecTel, which began marketing its intelligent routing technology.[25] Cisco later used ConnecTel's technology and continues to use ConnecTel's patented technology in, at least, its Richardson location within this District.[26]

**1.      ConnecTel's Previous Litigation.**

On May 23, 2000, ConnecTel filed a Complaint against ITXC, Inc., in the Eastern District of Pennsylvania, alleging infringement of the '307 patent. That suit, after being handled by Judge Stuart Dalzell *for almost three years*, was assigned in late December 2002 to Judge James Gardner, and ultimately settled prior to final disposition. During the 2000 time frame, ConnecTel also filed a Complaint against Arbinet Holdings Corporation for infringement of the '307 patent.

*a.      Proceedings in ConnecTel v. Arbinet: the Pennsylvania Action.*

The *Arbinet* matter was transferred to the Southern District of New York, where it was

---

[23] *See id.*

[24]*See* Declaration of Allen Kaplan, ¶ 2("Kaplan Decl."), attached hereto as Exhibit C.

[25] Kaplan Decl., ¶ 2, Exhibit C.

[26] Monterey was merged into Cisco in September 1999, when Cisco completed the stock purchase acquisition of all outstanding shares, options, and warrants in Monterey that Cisco did not already own. *See, e.g.,* Plaintiff's Complaint in *Alcatel.* Monterey ceased to exist as a separate legal entity at that time. *See Alcatel,* p. 9, Exhibit A (noting that a strong connection existed between the case and forum, where this Cisco's Richardson office was the location that developed the accused router). Upon information and belief, the activities in Cisco's Richardson office also involve the technology in this suit.

eventually dismissed by agreement in November of *2001*.[27]   Cisco's Motion blatantly misrepresents to this Court that the *Arbinet* case was "dismissed with prejudice in November *2004*" and that "*[i]n that same month . . .* ConnecTel filed this case against Cisco."[28]   Defendant is wrong on the facts.  As confirmed by Defendant's own exhibits, this action was filed on November 2, 2004, *three years after the Arbinet matter reached conclusion*.[29]

### b.      Proceedings in ConnecTel v. ITXC: the Pennsylvania Action.

Judge Dalzell presided over the *ITXC* case through December 2002,[30] when the matter was transferred to Judge Gardner on December 19, 2002.  Again, Defendant misrepresents to this Court that "the parties engaged in significant substantive motion practice before Judge Gardner."[31]   Defendant is again wrong on the facts.  In fact, by the time the matter was transferred to Judge Gardner, discovery and motions practice were complete (e.g., motions for summary judgment and initial claims construction briefing were filed).  Judge Gardner took no action until more than nine months later, when he entered a September 30, 2003, order scheduling the *Markman* hearing for February 10, 2004.[32]   The hearing on February 10, 2004, as acknowledged by Judge Gardner in a footnote, was "for *the limited purpose of learning about the patented technology*."[33]   The Judge only specifically construed two claims relating to the terms "property of the data file" and "measuring said variable parameters."[34]

---

[27] *See Arbinet* Docket, No. 1:01-CV-01293-GEL, (S.D.N.Y.), attached hereto as Exhibit D.  (Please note that this was also an Exhibit to Defendant's Motion.)

[28] Defendant, Cisco Inc.'s, Motion to Transfer to the Eastern District of Pennsylvania. ("Defendant's Motion"), p. 5.

[29] *Compare* Plaintiff's Original Complaint and Jury Demand (showing this case was filed on Nov. 2, 2004) *with Arbinet* Docket, Exhibit D (showing the *Arbinet* case was dismissed on Nov. 15, 2001).

[30] *See ITXC* Docket, No. 2:00-CV-02627-JKG, (E.D. PA), attached hereto as Exhibit E.

[31] Defendant's Motion, p. 4.

[32] *See ITXC* Docket, Exhibit E.

[33] *See* Memorandum and Opinion in *ConnecTel, Inc. v. ITXC, Inc.* on Motion for Summary Judgment and Claims Construction Issues ("*ITXC* Opinion"), p. 2, n. 2 (Gardner, J.)("Although we labeled the February 10, 2004 hearing a *Markman* hearing ... we utilized the hearing for the limited purpose of learning about the patent technology."), attached hereto as Exhibit F.

[34] *ITXC* Opinion, p. 4-14.  The parties agreed on the construction of a third term, not addressed in the *ITXC* Opinion.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 6**

## 2.    The scope of the *ITXC* Pennsylvania action was limited to one patent.

Only one patent - the '307 - was at issue in *ITXC*.[35]   Accordingly, discovery was limited

to just that patent.[36]   The '641 patent, the '594 patent, and the '404 patent were not addressed in

the Pennsylvania action.[37]   Thus, the Pennsylvania court was not privy to the other three distinct,

separately issued patents, or the multiple claims of those patents.[38]

Contrary to Cisco's statements, Plaintiff is not "scurrying" to "avoid [the Pennsylvania

Court's] prior rulings," as repeatedly mischaracterized by Defendant in its Motion.[39]   Instead,

Plaintiff has the utmost confidence in this Court's ability to issue consistent claim constructions.

Indeed, this District previously noted that a prior claim construction is not binding, and the claim

construction of another Court is easily referenced if necessary.[40]   Accordingly, should this Court

desire to reference the Pennsylvania Court's construction of two claims under the '307 patent, it

is certainly free to do so.   Accordingly, the mere existence of such a construction does not

warrant transfer of venue in and of itself.[41]   Instead, claim construction is but one aspect of a

---

[35] *See, e.g., ITXC* Opinion.
[36] Kaplan Decl., ¶¶ 3-5, Exhibit C.  Cisco's assertion that the Pennsylvania suit involved the "same patent family at issue in this case" or "the 307 patent" and "its progeny," is incorrect.  Defendant's Motion, p. 2.  The pleadings establish that the only patent involved was '307; that only two terms were construed; and that the allegations of infringement never went beyond that one patent.  The court acknowledged in its opinion, however, that the '307 patent contains some twenty-eight additional claims.  *See* Defendant's Motion., p. 4.
[37] Kaplan Decl., ¶¶ 3-5, Exhibit C.
[38] Kaplan Decl., ¶¶ 3-5, Exhibit C.
[39] Defendant's Motion, p. 7, 10.  *See infra* discussion regarding Defendant's factual misrepresentations regarding the *Arbinet* case.
[40] *Datamize v. Fidelity Brokerage Services, LLC*, 2004 WL 1683171, at *7 (E.D. Tex. Apr. 22, 2004) (holding that "'the decision of the California court in the previous action is readily available to this court [or vice versa] for consultation" if this Court or the Northern District of California determine a particular claim term should be construed consistently."); *Texas Instruments, Inc. v. Linear Tech. Corp.*, 182 F. Supp. 2d 580, 586-87 (E.D. Tex. 2002) (recognizing that prior claim constructions are not binding and that "there is not a single case where independent defendants were collaterally estopped from constructing a new claim construction. ... [T]hose district courts which have addressed the issue have concluded that defendants in a later proceeding involving previously construed patents should have the opportunity to brief and argue the issue of claim construction, notwithstanding any policy in favor of uniformity.").  *See also Somafor Danek Holdings, Inc. v. United States Surgical Corp.*, 1998 U.S. Dist. LEXIS 21746, at *11-*12 (W.D. Tenn. 1998)(denying for similar reasons motion to transfer to Central District of California and rejecting argument that relationship between patents would create duplicative litigation).
[41] *Datamize*, 2004 WL 1683171 at *7.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 7**

patent infringement case.[42]

### III.  ARGUMENT AND AUTHORITIES

**A.  Section 1404(a) Analysis: This District Requires Substantial Evidence of Convenience and Public Interest Factors to Disturb Plaintiff's Choice of Forum.**

Section 1404(a) allows a district court to transfer any civil action to any other division where it might have been brought if it is necessary "[f]or the convenience of parties and witnesses" and is "in the interest of justice."[43]  The decision to transfer under 1404(a) is within the sound discretion of the district court.[44]  Defendant's burden under 1404(a) is heavy – it must adduce substantial evidence favoring transfer and rebutting the presumption favoring Plaintiff's choice of forum.[45]  Because the Plaintiff's right to choose a forum is "well-established" - a paramount consideration in any determination of a transfer request – "it will not be lightly disturbed."[46]  Accordingly, Defendant is required to marshal *substantial evidence* utilizing the public and private interest considerations enumerated below.[47]

**1.  The 1404(a) convenience and public interest factors favor Plaintiff and mitigate against transfer.**

---

[42] *Datamize*, 2004 WL 1683171 at *6. As noted by Judge Folsom, "different products involve different technology and functionality, which are two of the most dominant and time consuming components of a patent case in discovery or at trial." *Id.*

[43] 28 U.S.C. § 1404(a) (2003); *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003)(Defendant's burden to prove transfer is heavy); *Cummins-Allison Corp.*, 2004 WL 1635534 at *4; *Datamize*, 2004 WL 1683171, at *3.

[44] *In re Triton Energy Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).

[45] *Datamize*, 2004 WL 1683171 at *6 (holding the party seeking transfer bears the burden of showing convenience factors favor transfer); *Cummins-Allison Corp.*, 2004 WL 1635534 ("The plaintiff's decision to file suit in the Eastern District of Texas, Marshall Division, is entitled to substantial deference and 'should not be lightly disturbed.'") (citing *Nokia Corp. v. Buca, Inc.*, 2002 WL 1461913, *2 (N.D. Tex. 2002)). *See also Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *In re Horseshoe Entertainment*, 337 F.3d 429 at 433 (Defendant's burden to prove transfer is heavy); *Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1996) (holding venue is primarily an issue of convenience); *LeDoux v. Isle of Capri Casino's Inc.*, 218 F. Supp. 2d 835, 837 (E.D. Tex. 2002); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 771-74 (E.D. Tex. 2000); *National Group Underwriters, Inc. v. Southern Security Life Ins. Co.*, 2001 WL 1478800 at *2.

[46] *Cummins-Allison Corp.*, 2004 WL 1635534; *In re Triton Sec. Litig.*, 70 F. Supp. 2d at 678, 688; *Texas Instruments, Inc.*, 815 F. Supp. at 996; *see supra* n. 45.

[47] *In re Triton Sec. Litig.*, 70 F. Supp. 2d at 690; *Mohamed*, 90 F. Supp. 2d at 771-74; *Datamize*, 2004 WL 1683171, at *8-*9; *Cummins-Allison Corp.*, 2004 WL 1635534 at *4 (holding the balance of convenience and justice must *substantially* weigh in favor of transfer); *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999).

The private interest convenience factors consist of:  (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and (5) the possibility of delay and prejudice if transfer is granted.[48]

The public interest, or "interests of justice" factors, consist of: (1) the relative backlog and other administrative difficulties of the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating local disputes; and (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult conflict of law problems.[49]

This Court has consistently held that transfer decisions require a balance of all 1404(a) factors, and a party's failure to address those factors dictates a denial of the motion for transfer.[50] Clearly, Defendant has not shown that transfer is appropriate under the required 1404(a) transfer analysis, and has failed to adduce substantial evidence to override Plaintiff's choice of forum.[51]

### 2.    Defendant fails to overcome presumption favoring Plaintiff's choice of forum.

Defendant's protracted speculation and supposition as to ConnecTel's motive for filing this suit in Texas is unavailing and irrelevant.  The Plaintiff's right to choose a forum renders Plaintiff's actual objective in selecting the forum insignificant.[52]  As Plaintiff, ConnecTel's forum choice is accorded a presumption of propriety: "The existence of [forum choices] not only

---

[48] *In re Triton Sec. Litig.*, 70 F. Supp. 2d at 688.
[49] *In re Triton Sec. Litig.*, 70 F. Supp. 2d at 688.
[50] *Mohamed,* 90 F. Supp. 2d at 771; *Datamize,* 2004 WL 1683171, at *8 (holding the party seeking transfer has the burden of showing factors favoring transfer); *Cummins-Allison Corp.*, 2004 WL 1635534 at *4
[51] *Mohamed*, 90 F. Supp. 2d at 775 (holding that movant must identify the key witnesses to be called at trial and outline the substance of their testimony); *In re Triton Sec. Litig.*, 70 F. Supp. at 690.
[52] *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d at 678, 690; *Mohamed*, 90 F. Supp.2d at 757, 771-74.

permits but indeed invites counsel in an adversary system [] to serve in his client's interests [by selecting] the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment ..."[53] By extension, evidence that the forum is not the plaintiff's home forum; that it is inconvenient for the plaintiff; or that it is inconvenient for plaintiff's witnesses, is immaterial.[54] As Judge Ward noted, "the Plaintiff's inconvenience is not a consideration," for purposes of transferring venue.[55] Judge Ward's recent analysis is particularly instructive:

> Defendants urge the Court to afford the Plaintiff's choice of forum minimal deference because neither of the parties reside in this forum and none of the significant events relevant to this action occurred in this forum. However, the admitted sale of allegedly infringing products in the Eastern District of Texas, Marshall Division, is an event that is significant and relevant to this action. Therefore, the Plaintiff's choice of forum may be overturned only by a substantial showing that the other factors clearly favor transfer to an alternative forum.[56]

**B.**   ***Logan v. Hormel Foods Corporation* is Inapposite and Defendant's Reliance on *Logan* Is Erroneous.**

In its Motion, Defendant relies upon this Court's decision in *Logan v. Hormel Foods Corporation*, Case No. 6:04-CV-211 (E.D. Tex. August 25, 2004), to support its argument that

---

[53] *Datamize*, 2004 WL 1683171, at *8-*9 (citing *McCuin* from the Fifth Circuit). *See,e.g. McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983); *In re Triton Sec. Litig.*, 70 F. Supp. 2d at 690; *Mohamed*, 90 F. Supp. 2d at 771-74; *Cummins-Allison Corp.*, 2004 WL 1635534 at *4 (holding the balance of convenience and justice must *substantially* weigh in favor of transfer); *Robertson*, 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999).

[54] *Datamize*, 2004 WL 1683171 at *8-*9; *Cummins-Allison Corp v. Glory, Ltd.*, 2004 WL 1635534 (E.D. Tex. May 26, 2004)(Ward, J.)(Plaintiff's location in Illinois, indicating inconvenience of keeping case in Texas, was not consideration); 15 Charles Alan Wright & Arthur R. Miller, FED. PRACTICE & PROCEDURE § 3849 (West 1986).

[55] *Cummins-Allison Corp.*, 2004 WL 1635534 at *5; *Alcatel*, p. 4 (citing *Mohamed*, 90 F. Supp. 2d at 773) (As this District has noted previously: "this Court []'really doesn't care about the Plaintiff's motive for choosing this forum.'"); *Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993) ("This Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum.").

[56] *Cummins-Allison*, 2004 WL 1635534 at *5 (internal citations omitted); *see also In re Triton Sec. Litig.*, 70 F. Supp. 2d at 689.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 10**

transferring venue to the Eastern District of Pennsylvania is appropriate under 1404(a).[57]

Defendant's reliance on *Logan* to override ConnecTel's choice of forum is erroneous. *Logan* is

inapposite and is distinguishable from this case on several grounds. When applying the factors

set forth by § 1404(a), the facts of this case strongly mitigate against transfer to the Eastern

District of Pennsylvania.

> 1. **Unlike *Logan*, there is no prior procedural history in this case – this Court is the blank slate for litigation between ConnecTel and Cisco.**

As this Court is aware, *Logan* was an infringement action involving a patent describing a

boneless meat product and a meat slicer.[58] Unlike this case, *Logan* had an extensive procedural

history, and the facts supported "forum shopping" because the Plaintiff literally filed, dismissed,

and re-filed his action against *the same or related Defendants* in venues throughout Texas and

the United States.[59] *Logan* also had extensive appellate history before the Fifth Circuit and the

Federal Circuit.[60]

Simply stated, *Logan* is distinguishable because this is the first time ConnecTel has sued

Cisco; there is no pending litigation between the parties;[61] this is the first time a Court will

adjudicate hundreds of claims regarding the '641 patent, the '594 patent, and the '404 patent; and

there is no procedural history (e.g., dismissals, transfers, court rulings, or appeals). This Court is

the blank slate for litigation between ConnecTel and Cisco.

---

[57] Defendant's Motion, p. 9.
[58] *See, e.g., Logan v. Hormel Foods Corp.*, Case No. 6:04-CV-211 (E.D. Tex. August 25, 2004), at *1-4.
[59] *See id.*
[60] *Logan v. The Original HoneyBaked Ham Co. of Georgia, Inc.*, 60 Fed.Appx. 816 (Fed.Cir.2003)("The travails of this case would fill a blue book in a final law exam"); *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447 (5th Cir.2001). For full accounting of convoluted case history, and significant forum shopping, *see Logan Farms v. HBH, Inc. DE*, 282 F.Supp.2d 776 (S.D.Ohio 2003).
[61] The absence of any related action pending in the Pennsylvania district additionally weighs against transfer. *Datamize,* 2004 WL 1683171 at *6. This District recently concluded that transfer was inappropriate: "where patents with different claims and claim scopes were allegedly infringed by different products in different industries, transfer is not appropriate." *Id.* The Court in *Datamize* concluded that the differences in patent language, combined with the differences in the parties and the instrumentalities at issue, negated transfer. *Id.*

**2.      Unlike _Logan_, this case involves multiple patents and multiple claims not construed by the Pennsylvania Court.**

_Logan_ involved the adjudication of a single patent, not multiple patents, and one and only one specific use (e.g., slicing meat).[62]   This case involves four patents and over two hundred claims.  _ITXC_ involved only one patent at issue in this case, the '307 patent.[63]   Accordingly, the Pennsylvania Court's familiarity is limited to the '307 patent.  In fact, as previously stated, the Pennsylvania Court was not privy to the '641 patent, the '594 patent, and the '404 patent, and the remaining claims under these distinct, separately issued patents.[64]

**3.      Unlike _Logan_, there is no risk of inconsistent claims construction.**

While the Pennsylvania court might arguably be familiar with two claims regarding the '307 patent, _it has no familiarity_ with the '641 patent, the '594 patent, the '404 patent, and the remaining claims at issue under these distinct, separately issued patents.[65]   The claim constructions relating to these three new patents will fall within the province of this Court.

Contrary to Cisco's statements, Plaintiff is not "scurrying" to "avoid [the Pennsylvania Court's] prior rulings," as repeatedly mischaracterized by Defendant in its Motion.[66]   Instead, Plaintiff has the utmost confidence in this Court's ability to issue consistent claim constructions.  Indeed, this District previously noted that a prior claim construction is not binding, and the claim construction of another Court is easily referenced if necessary.[67]   Accordingly, should this Court

---

[62] _See id._; _See, e.g., Logan v. Hormel Foods Corp._, Case No. 6:04-CV-211 (E.D. Tex. August 25, 2004), at *1-4.

[63] _See ITXC_ Docket, Exhibit E; _ITXC_ Opinion, Exhibit F; Kaplan Decl. ¶¶ 3-5.

[64] _See id._

[65] _See id._

[66] Defendant's Motion, p. 7, 10.  _See infra_ section discussing Defendant's factual misrepresentations regarding the _Arbinet_ case.

[67] _Datamize_, 2004 WL 1683171 at *8-*9; _Cummins-Allison Corp v. Glory, Ltd._, 2004 WL 1635534 (E.D. Tex. May 26, 2004)(Ward, J.)(Plaintiff's location in Illinois, indicating inconvenience of keeping case in Texas, was not consideration); 15 Charles Alan Wright & Arthur R. Miller, FED. PRACTICE & PROCEDURE § 3849 (West 1986).

[67] _Cummins-Allison Corp._, 2004 WL 1635534 at *5; _Alcatel_, p. 4 (citing _Mohamed_, 90 F. Supp. 2d at 773) (As this District has noted previously: "this Court []'really doesn't care about the Plaintiff's motive for choosing this forum.'"); _Texas Instruments Inc. v. Micron Semiconductor, Inc._, 815 F. Supp. 994, 997 (E.D. Tex. 1993) ("This

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 12**

desire to reference the Pennsylvania Court's construction of two claims under the '307 patent, it is certainly free to do so.    The mere existence of such a construction does not warrant transfer of venue in and of itself.[68]  Claim construction is but one aspect of a patent infringement case.[69]

    **4.**      **Unlike _Logan_, all the § 1404(a) public interest and convenience factors favor Plaintiff and mitigate against transfer.**

As discussed in detail below, and unlike in _Logan_, Cisco fails to marshal substantial evidence under the § 1404(a) factors favoring transfer and rebutting the presumption favoring Plaintiff's choice of forum.  All the § 1404(a) factors in this case weigh in favor of Plaintiff and mitigate against transfer.

**C.**    **The § 1404(a) Public Interest Factors Favor Plaintiff and Mitigate Against Transfer.**

    **1.**      **Judicial economy mitigates against transfer in this case.**

Defendant seeks to transfer to the Eastern District of Pennsylvania under the guise that it is in the interest of justice and judicial economy because Judge James Gardner merely construed two claims of the over two hundred claims at issue in this case. As discussed _infra_, despite the Pennsylvania court's familiarity with one of the patents at issue, this case involves a different defendant, completely different products, and three different, distinct patents.  Indeed, the Pennsylvania court has no familiarity with the '641 patent, the '594 patent, and the '404 patent, with the remaining claims under these distinct, separately issued patents, or with Cisco and its accused products.

By the time the _ITXC_ matter was transferred to Judge Gardner, discovery and motions practice were complete (e.g., motions for summary judgment and initial claims construction

---

[68] _Datamize_, 2004 WL 1683171 at *7

Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum.").

[69] _Datamize_, 2004 WL 1683171 at *6. As noted by Judge Folsom, "different products involve different technology and functionality, which are two of the most dominant and time consuming components of a patent case in discovery or at trial." _Id._

briefing were filed).[70]   Judge Gardner took no action until more than nine months later, when he entered a September 30, 2003, order scheduling the *Markman* hearing for February 10, 2004.[71] The hearing on February 10, 2004, as acknowledged by Judge Gardner in a footnote, was "for *the limited purpose of learning about the patented technology*."[72]   Judge Gardner only construed two terms relating to the terms "property of the data file" and "measuring said variable parameters."[73]   In the nineteen months Judge Gardner was assigned to the *ITXC* matter, he held one hearing, scheduled and then postponed a *Daubert* hearing, denied one dispositive motion without prejudice, and assigned the case to a magistrate for a settlement conference.[74]

By contrast, in the eleven months *this Court* presided over Cisco's counterclaim suit against *Alcatel*, this Court gained intimate knowledge of Cisco and its router technology.  This Court held eight hearings, decided five dispositive motions, resolved two emergency discovery disputes, completed discovery, set mediation deadlines, held scheduling, settlement, and pretrial conferences, handled expert designations and reports, and was bearing down upon pretrial when the case was settled.[75]

This Court's intimate knowledge of Cisco and its router technology severely undercuts Cisco's interests of justice and judicial economy arguments based on any alleged familiarity of the Pennsylvania court – this §1404(a) public interest factor weighs heavily against transfer.[76]

2.      **Judicial administration and conservation of judicial resources weigh heavily**

---

[70] *See IXTC* Docket, Exhibit E.

[71] *See id.*

[72] *See* Memorandum and Opinion in *ConnecTel, Inc. v. ITXC, Inc.* on Motion for Summary Judgment and Claims Construction Issues ("*ITXC* Opinion"), p. 2, n. 2 (Gardner, J.) ("Although we labeled the February 10, 2004 hearing a *Markman* hearing … we utilized the hearing for the limited purpose of learning about the patent technology."), attached hereto as Exhibit F.

[73] *ITXC* Opinion, p. 4-14, Exhibit E.  The parties agreed on the construction of a third term.

[74] *See IXTC* Docket, Exhibit E.

[75] *See Alcatel* Docket, 4:03-CV-00176-LED (E.D. Tex.), attached hereto as Exhibit G.

[76] Judge Ward also has intimate knowledge and familiarity with Cisco and its technology.  Judge Ward presided over the *Huawei* case where Cisco was the Plaintiff and *voluntarily* chose this District.  *See Cisco Systems, Inc v. Huawei Technologies, Co., Ltd.*, 266 F. Supp. 2d 551 (E.D. Tex. 2003)(Ward, J.).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 14**

**against transfer.**

The condition of a Court's docket is a significant factor to consider in determining whether a case should be transferred under § 1404(a).[77] A rapidly moving docket supports the plaintiff's choice of forum both because of convenience and because it is in the public's interest of justice for the Court to quickly adjudicate matters.[78] A rapid docket involves considerations of the speed of adjudication, judicial economy and docket congestion.[79]

This District also has a less congested docket than that of the Eastern District of Pennsylvania. Notably, for the twelve-month period ending September 30, 2003, the Eastern District of Pennsylvania had a total of 12,173 filings versus only 4,072 filings in the Eastern District of Texas.[80] The transfer of this case to Pennsylvania will necessarily cause a delay in the proceedings; therefore, this § 1404(a) public interest factor mitigates against transfer.

### 3. The interests of this District's citizens mitigate against transfer.

The local interests of this District's citizens also weigh in Plaintiff's favor and weighs heavily against transfer. Cisco's extensive business activities regarding its router technology at the Richardson office in this District,[81] and the specific sales of infringing products within this District,[82] give this District's citizens a greater interest in the dispute and in sitting on the jury. This § 1404(a) public interest factor mitigates against transfer.

---

[77] See Box v. Ameritrust Texas, N.A., et al., 810 F. Supp. 776 (E.D. Tex. 1992); Texas Instruments, Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 999 (E.D. Tex. 1993).
[78] McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261-62 (5th Cir. 1983); Lone Star Milk Producers, Inc. v. Dairy Farmers of Am., Inc., E.D. Tex. Jan. 19, 2001 (Regardless of Plaintiff's motivation for choosing a particular forum, the court should give that choice great deference.").
[79] See In re Triton Sec. Lit., 70 F. Supp. 2d. at 688.
[80] See Naylor Decl., ¶ 4, and accompanying exhibits, attached hereto as Exhibit B demonstrating current U.S. District Court numbers for caseloads, from http://www.uscourts.gov/fcmstat for the E.D. Pennsylvania and the E.D. of Texas. This data demonstrates 512 civil filings per judgeship in the E.D. of Pennsylvania versus only 431 per judgeship in the E.D. of Texas. Id.
[81] See Alcatel, Exhibit A (detailing activities relating to router technology and the fact that Cisco's Richardson, Texas office is the "center of gravity" for router development).
[82] Naylor Decl., ¶¶ 5-15 and accompanying exhibits, attached hereto as Exhibit B.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 15**

4.     **This District and this Court's specialized knowledge in patent law weighs against transfer.**

The fourth § 1404(a) public interest factor considers each courts' familiarity or relative capacity for the legal issues, including conflicts of law, court administration, any specialization or expertise in the area, and other administrative considerations.[83]   The Eastern District of Texas is renowned for its expertise in patent law and has the third largest docket of patent cases in the nation.[84]   Factoring in this District's specialized local rules governing patent cases, and its efficient docket discussed *infra*, all public interest factors weigh in favor of Plaintiff and against transfer.

D.     **The § 1404(a) Convenience Factors Favor Plaintiff and Mitigate Against Transfer.**

1.     **The place of the alleged wrong is within this District, which is the "center of gravity" for Cisco.**

The preferred forum in a patent infringement action is the center of the accused activity.[85] If there is no center of infringement activity, then the plaintiff may bring its action in any forum where the alleged infringement is occurring, and Plaintiff's forum choice will not be undermined by allegations that infringing activities occur elsewhere or throughout the country.[86]

There has recently been a judicial determination that this District is Cisco's "center of gravity."[87]   Specifically, Judge Brown ruled that Cisco's design, manufacture and distribution of its products and certain router technology within this District prompted this District's label as

---

[83] *See In re Volkswagen AG*, 371 F. 3d 201, 203 (5th Cir. 2004)(holding that the public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law); *see also Z-Tel Communications, Inc. v. SBC Communications, Inc.*, 331 F. Supp. 2d at 567 (E.D. Tex. 2004)(noting "Defendant only offers arguments on the local interests in adjudicating local disputes and conflict of laws" and holding same was insufficient to justify transfer on public interest grounds in light of absence of evidence on other factors).
[84] *See* The Marshall Plan, Brenda Sandburg, *Texas Lawyer*, July 21, 2003.
[85] *Cummins Allison Corp.*, 2004 WL 1635534 at *6.
[86] *Id.*
[87] *See Alcatel*, p. 9-10, Exhibit A.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 16**

"the center of gravity" for Cisco's patent infringement claims regarding router technology.[88] That judicial determination confirms the well-established rule that "the place where the accused device was conceived, designed, manufactured, and distributed marks the 'center of gravity of patent infringement.'"[89] Indeed, the Court's ruling laid a solid foundation for this District to become the center of gravity for Cisco's router technology.[90]

Furthermore, Cisco has substantial contacts in this jurisdiction. In fact, Cisco maintains six offices in Texas, located in Austin, El Paso, Houston, Richardson, Irving, and San Antonio,[91] from which it actively sells infringing products. Notably, the Richardson office, located within this District, is considered a technological epicenter for Cisco's router technology.[92] In fact, in a prior proceeding, this District held that its designers, supervisors, developers, inventors, and witnesses who conceived and developed router technology reside and have been employed within this District.[93]

Cisco's activities are extensive in this District. In fact, Cisco partners with both large and small retailers through which it markets, advertises, and sells its infringing products.[94] Over twenty-five retailers sell, market, and advertise Cisco's infringing products within this District alone,[95] and over two hundred retailers do so throughout Texas.[96] Therefore, this District has a

---

[88] *Id.*

[89] *See Alcatel*, p. 8, Exhibit A.

[90] Upon information and belief, the activities in Cisco's Richardson office also involve the technology in this suit.

[91] *See supra* n. 2-7.

[92] *See Alcatel*, p. 5-10, Exhibit A.

[93] *See id.* Please note that Plaintiff is not conceding the issue of invention regarding the patents at issue.

[94] Naylor Decl., ¶¶ 5-15 and accompanying exhibits, attached hereto as Exhibit B. Furthermore, Cisco's sole affidavit in support of its Motion failed to sufficiently allege and quantify Pennsylvania contacts.

[95] *See* Naylor Decl., ¶¶ 5-15 and accompanying exhibits, attached hereto as Exhibit B. According to its website, retailers carrying Cisco products are required to meet certain criteria, qualifying them as Cisco "partners." *Id.* There are various levels of Cisco "partners," according to the criteria met and the services or products supplied, but Cisco clearly has supervisory approval. *Id.*

[96] Naylor Declaration, ¶¶ 5-15 and accompanying exhibits, attached hereto as Exhibit B. The website also allows the user to search according to product or service fields. The list of retailers provided in search results is complete with addresses, phone numbers, website links, and other contact information and descriptions. *See id.*

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 17**

demonstrated factual nexus to Cisco's infringement; this convenience factor weighs heavily against transfer.

**2.      The evidence, sources of proof, and counsel are centrally located in Texas and this District.**

Courts have consistently observed that this factor is now of only "slight significance due to the increasing ease of storage, communication, copying and transportation of documents and information."[97]   Cisco's local counsel is located in this District.[98]   Cisco's proof and documents are likely to be repeats of those previously produced in the prior cases before this District involving the same router technology at issue, and are likely located in or near this District.[99]

In its Motion, Cisco misrepresents to this Court that ConnecTel has a Pennsylvania office and that the co-inventor on the patents resides in Erie, Pennsylvania.[100]   Defendant is again wrong on the facts.   First, it is true that during the *ITXC* litigation, ConnecTel had an office located in Horsham, Pennsylvania, relating to that litigation and the licensing of the '307 patent.[101]   After the *ITXC* litigation concluded, ConnecTel's Horsham, Pennsylvania office was closed.[102]   Currently, ConnecTel has no offices in Pennsylvania.[103]   ConnecTel has no contacts or business relationships with the state of Pennsylvania.[104]   Most of the documents relevant to this suit are located with Daniel F. Perez, lead counsel at Winstead Sechrest & Minick P.C. in Dallas,

---

[97] *See Cummins-Allison, Corp.*, 2004 WL 1635534 at *6.  Also assisting with timely and efficient discovery are the efficiency incorporated into the Eastern District's local rule regarding mandatory disclosure requirements, and the additional disclosure requirements found in the Discovery Order for each case.  *Id.*

[98] Finally, while the location of counsel is traditionally assigned little weight, it is worth noting that counsel for both parties is in Texas, near the Eastern District, and that any weight assigned to this factor is against transfer.  *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp.2d 757, 771-74 (E.D. Tex. 2000).  Notably, McKool Smith previously represented Cisco in its suit against *Huawei* regarding the same or related technology.

[99] Cisco also initiated and maintained suit within the Eastern District against Huawei Technologies, Co., Ltd, thus implicitly acknowledging the convenience of the venue on some level.  *See Cisco Systems, Inc v. Huawei Technologies, Co., Ltd.*, 266 F. Supp. 2d 551 (E.D. Tex. 2003).

[100] Defendant's Motion, p. 2-3.

[101] Kaplan Decl., ¶¶ 6-7, Exhibit C.

[102] Kaplan Decl., ¶¶ 8-9, Exhibit C.

[103] Kaplan Decl., ¶¶ 8-9, Exhibit C.

[104] Kaplan Decl., ¶¶ 8-10 Exhibit C.

Texas.[105]   Second,  the co-inventor on the patents at issue no longer resides in Pennsylvania.[106]

To the best of Plaintiff's knowledge, the co-inventor now resides in Florida.[107]  This convenience

factor favors Plaintiff and weighs heavily against transfer.

### 3.        This District is more convenient for witnesses.

When alleging inconvenient forum, the defendant must identify all key witnesses with

specificity, outlining their locations and the substance of their testimony.[108]  Generalizations are

insufficient, and are not considered evidence of inconvenience.[109]  The simple fact that witnesses

are located elsewhere is insufficient - there must then be some showing of *substantial*

*inconvenience.*[110]

In a prior proceeding, Judge Brown denied Cisco's motion to transfer venue to California

because Cisco failed to adduce substantial proof of witness inconvenience.[111]   Judge Brown

recognized:

> Cisco has not shown that [witnesses] Baghdasarian and Zadikian are so central to
> the litigation as to merit transfer. ... [N]o evidence shows that either has
> knowledge of polling, the particular facet of the Wavelength Router at issue in
> this case, or, for that matter, how deeply involved they were in the design and
> development process. ... Accordingly, Cisco fails to show this factor weighs in
> favor of transfer.[112]

Similarly, in this case, Defendant again fails to provide any specific reasons why this

---

[105] Kaplan Decl., ¶ 10, Exhibit C.

[106] Kaplan Decl., ¶ 11, Exhibit C.

[107] *Id.*

[108] *See Cummins-Allison, Corp.*, 2004 WL 1635534 at *5-*6; *Mohamed*, 90 F. Supp. 2d at 776.

[109] *See id.*

[110] *Mohamed*, 90 F. Supp.2d 757, 774 (E.D. Tex. 2000); *American Dental Technologies v. Kreativ, Inc.*, 1997 WL 706635 (S.D. Tex. 1997); *Cummins-Allison Corp.*, 2004 WL 1635534 at *6 (citing *Mohamed*, 90 F. Supp. 2d at 776) ("[A]s has been noted before, Marshall is not in the wastelands of Siberia.  A regional airport is located in Shreveport, Louisiana, just 30 minutes away, and an international airport with direct flights . . . just a couple of hours away.").

[111] *See, e.g., Alcatel*, p. 6-7, Exhibit A.  This District previously noted that "[Cisco] offers neither evidence nor argument showing Texas is comparatively less convenient than California.  Had it attempted this task, Cisco would have faced an uphill battle since Alcatel's headquarters and Cisco's Router Business Unit, the activities of which are crucial to this case, are located in this district.  Although the principal place of business of Cisco might be in California, any agents concerned with the router business likely travel here anyway." *Id.*

[112] *Alcatel*, p. 6-7, Exhibit A.

---

venue would be inconvenient for witnesses who once developed and designed similar router technology.[113]

As discussed *infra*, the Richardson office, located within this District, is considered a technological epicenter for router technology.[114]  In fact, this District has held that its designers, supervisors, developers, inventors, and witnesses who conceived and developed Cisco's routers reside and have been employed within this District.[115]  Upon information and belief, the activities in Cisco's Richardson office involve the technology in this suit.  Therefore, this factor mitigates against transfer.

### 4.   Transfer to the Eastern District of Pennsylvania will result in prejudice and delay.

As noted *infra*, this District is renowned for efficiently managing patent cases.  This District has a less congested docket than that of Pennsylvania - for the twelve-month period ending September 30, 2003, the Eastern District of Pennsylvania had a total of 12,173 filings versus only 4,072 filings in the Eastern District of Texas.[116]  The transfer of this case to Pennsylvania will cause a delay in the proceedings; therefore, this factor favors Plaintiff and weighs against transfer.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's choice of forum here in the Eastern District of Texas should be upheld, and Defendant's Motion denied.

---

[113] See *Cummins-Allison*, 2004 WL 1635534 at *6 ("Neither party specifically mentions any key non-party witnesses and where they are located, therefore, the convenience of the party and non-party witnesses and the cost of obtaining them at trial does not weigh in favor of transfer.").  *See, e.g.*, Defendant's Motion, p. 9-12 (failing to show substantial evidence of inconvenience for Defendants' witnesses).
[114] See *Alcatel*, p. 8-10, Exhibit A.
[115] See *Alcatel*, p. 5-10, Exhibit A.  Please note that Plaintiff is not conceding the issue of invention regarding the patents at issue.
[116] See Naylor Decl., ¶ 4 and accompanying exhibits, attached hereto as Exhibit B.

Respectfully submitted,

/s/ E. Glenn Thames, Jr.
POTTER MINTON, P.C.
E. Glenn Thames, Jr.
Texas Bar No.  00785087
PO Box 359
500 Plaza Tower
110 N. College
Tyler, Texas 75702
(903) 597-8311
(903) 593-0846 (fax)

WINSTEAD SECHREST & MINICK P.C.
Daniel F. Perez
Texas Bar No. 15776380
Mark Alan Calhoun
Texas Bar No. 03641500
Sanford E. Warren, Jr.
Texas Bar No. 20888690
5400 Renaissance Tower
1201 Elm Street
Dallas, TX  75270-2199
Telephone: (214) 754-5400
Fax: (214)745-5390

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing has been forwarded by ECF to the following attorney of record on this 20th day of January, 2005:

Sam F. Baxter, Esq.
State Bar No. 01938000
McKOOL SMITH, P.C.
505 East Travis Street, Suite 105
P.O. Box O
Marshall, Texas 75670

Jennifer L. Murphy

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF PENNSYLVANIA – Page 22

Dallas_1\4100277\1
43366-1 1/20/2005