IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

CONNECTEL, LLC

            Plaintiff,

   v.

CISCO SYSTEMS, INC.,

            Defendant.

Civil Action No. 2-04CV-396

Hon. Leonard E. Davis

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO COMPEL**
**PATENT RULE 3-1 PRELIMINARY INFRINGEMENT CONTENTIONS**

**I.      INTRODUCTION**

This motion requests an order compelling ConnecTel to serve Preliminary Infringement Contentions ("PICs") "identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." *See* P.R. 3-1(c). In this litigation, ConnecTel accused more than 100 different products of infringing 120 different claims from four ConnecTel patents. ConnecTel's accusations encompass the majority of products Cisco offers, and ConnecTel correspondingly seeks expansive, burdensome discovery from Cisco. A *quid pro quo* for ConnecTel's assertion of patents in this forum (and the enormous discovery burdens ConnecTel is imposing on Cisco by accusing so many products) are this Court's Patent Rules, which, under the docket control order, required ConnecTel to serve on March 17, 2005, PICs that include "chart[s] identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." *See* P.R. 3-1(c).

Although ConnecTel served PICs including four charts, ConnecTel's charts do not comply with Rule 3-1(c). First, ConnecTel's PICs do not provide a chart for each accused product. Rather, ConnecTel provided only four charts for all of the over 100 accused products. ConnecTel created four product categories – "Routers," "Switches," "Gateways and Other Products," and Cisco's "IOS Software" – and then provided one chart for each generic category ConnecTel created.

Second, ConnecTel's four charts do not specifically identify where each element of each asserted claim is found, either in any individual accused product, or even in the product "categories" ConnecTel created. In fact, ConnecTel's four charts do not refer in their text specifically to even one of the over 100 accused products. Instead, ConnecTel's contentions for virtually every element of the eleven independent claims and for every element of the 109 asserted dependent claims simply mimic the language of the asserted claims without providing a specific identification of where each claim element is found. Upon receipt of these charts, Cisco promptly requested to meet and confer with ConnecTel.

1

In the meet and confers, ConnecTel argued that its charts follow the rules because, even though the charts lack identification of where accused elements are found, ConnecTel included footnotes that cite to data sheets on Cisco's products.  But, ConnecTel's footnotes do not explain where each element is found.  Instead, ConnecTel provides a handful of footnotes (about ten) that contain string cites to multiple pages of Cisco data sheets.  The remaining six-hundred (600) footnotes basically refer back to these same ten footnotes with the statement "see supra."

Following multiple meet and confers, ConnecTel served "supplemental" charts with only cosmetic changes to the March 17 charts.  For example, ConnecTel added footnotes for each dependent claim, but those footnotes for the most part refer back to footnotes for the independent claims, without providing any explanation of how infringement is allegedly found.

This District issued its Patent Rules to require plaintiffs to crystallize their infringement theories before bringing suit and to disclose infringement contentions prior to discovery.  And even though ConnecTel's complaint specifically claims that Cisco is "blatantly infringing" ConnecTel's patents (*see* Exh. A at ¶ 43), ConnecTel has withheld its infringement contentions in Patent Rule discovery, repeating a few conclusory statements that mimic the claim language without providing any disclosure for key elements of independent claims, copying claim language verbatim for every dependent claim, string-citing to a box of data sheets, and cross-referencing over six hundred non-informative footnotes where only about ten footnotes have any text at all.  In the end, Cisco is left to guess where ConnecTel alleges that each element of each asserted claim is found in over 100 products for 120 asserted claims.  Thus, Cisco respectfully asks this Court to enforce its Patent Rules and compel ConnecTel to promptly serve an appropriate Rule 3-1(c) chart specifically identifying where each element of each claim is found in each accused product.[1]

---

[1]   Reserving all rights and without waiving its ability to seek further relief from this Court, Cisco does not intend to withhold product-related discovery from ConnecTel based upon ConnecTel's failure to provide rule-compliant PICs.  However, Cisco does contend that if ConnecTel fails to provide rule compliant charts for the massive array of products it has accused, Cisco may properly ask the Court to restrict the case to those products for which compliant charts are provided.

II.     **PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

A.      **The Parties**

In December 1984, a group of Stanford University computer scientists whose pioneering inventions enabled disparate networks to talk with each other and share information reliably founded Cisco.  *See, e.g.,* Exh. B (http://newsroom.cisco.com/dlls/company_overview.html). Since Cisco's founding, and for the past twenty years, Cisco has helped lead a revolution in communications through its development of a broad line of hardware and software solutions for transporting data, voice and video over networks and throughout the Internet.  *See id.*   Included in the innovative equipment that Cisco provides are network routers, switches, and other devices and software that enable data and information to be transported locally, regionally, and internationally.  *See id.*  As a pioneer in this area, Cisco has achieved widespread renown for its development of routers and other technologies, which in turn have facilitated the growth of computer networks and the Internet.  *See id.*

ConnecTel is a Delaware limited liability company that alleges to operate in the home of one of the named inventors, Mr. Allen Kaplan, in Miami, Florida.  *See* Exh. A at 2 (Complaint); Exh. C at 6.  ConnecTel first applied for one of its patents-in-suit in 1996, more than a decade after Cisco pioneered networking and Internet technologies.  ConnecTel does not now make or sell products under the patents-in-suit, and appears to exist principally to seek and assert patents. *See id.*  Prior to this case, ConnecTel asserted one or more of the patents-in-suit against five other companies, with all suits being dismissed, most being dismissed with express admissions or agreements that the defendant's products did not infringe.  *See* Exh. D (docket cover sheets).

B.      **ConnecTel Asserts 120 Claims Against Over 100 Different Products In Its Patent Rule 3-1 Contentions**

ConnecTel filed this patent infringement action against Cisco on November 2, 2004, alleging that Cisco is "blatantly infringing" ConnecTel's patents.  *See* Exh. A at ¶ 43.  This Court entered its docket control order on March 9, 2005.  *See* Exh. E.  According to the docket control order, Patent Rule 3-1 required ConnecTel to serve a compliant Disclosure of Asserted Claims

and Preliminary Infringement Contentions on March 17, 2005.  *See* Exh. E.  On March 17, 2005, ConnecTel served contentions asserting 120 different claims from its four patents against over 100 different products, placing a majority of Cisco's product line in issue.  *See* Exh. F at 2.  ConnecTel did not, however, provide charts specifically identifying how each accused product practices each claim element.

>    **C.     ConnecTel's Preliminary Infringement Contentions Include Four Category Infringement Charts As Allegedly Representative Of 100 Products**

Although ConnecTel accused over 100 products of infringement, ConnecTel's PIC charts do not provide any chart that shows where each element is allegedly found in each product.  Instead, ConnecTel provided four infringement charts for four alleged product "categories" under which ConnecTel grouped together one hundred different accused products.  ConnecTel created the following categories that it used generically: "Routers," "Switches," "Gateways And Other Products," and Cisco's operating system software called "IOS software."  *See* Exh. F at 2.  In addition to purporting to cover all of the over 100 specifically-named products, the "IOS software" chart purports to cover "any product using IOS software."  Nowhere in the text of any of these charts does ConnecTel make a specific reference to any accused product.  *See generally* Exh. F.

>    **D.     ConnecTel's March 17, 2005 PIC Charts Fail To Specifically Identify Where Each Element Of Each Claim Is Found In Each Product**

In the column in ConnecTel's generic charts that is supposed to identify where each element is allegedly found in the generic categories, ConnecTel mostly copied verbatim the language of the claim elements, making the charts even more deficient.  For all 109 asserted dependent claims, it is undisputed that for every single claim, ConnecTel's charts point to alleged infringement by simply copying the exact language of the dependent claims verbatim.  For each of the eleven independent claims, ConnecTel does not provide a specific identification of each element, but instead provides an overall paragraph for the entire claim.  The overall paragraph contains vague statements about the claim language, but does not identify specifically where

each alleged element is actually alleged to be found in the accused products, and for key claim elements it simply copies the claim element's language verbatim, as it did with the dependent claims.

ConnecTel's March 17, 2005 PIC charts include footnotes at the end of the conclusory language used for the independent claims. The March 17 charts have no footnotes for any of the dependent claims. A few of the footnotes contain string cites to Cisco product data sheets. Most footnotes in turn simply refer back to prior footnotes that have string cites. These string cites to various pages of data sheets do not state where each element is allegedly found in each asserted claim for each accused product.

### E.      The Parties' Meet And Confer Process

The parties met and conferred over ConnecTel's PICs through correspondence and two conferences held on March 24 and 25, 2005. *See* Exhs. H-L. After a first conference on March 24, Cisco counsel presented its concerns, and ConnecTel counsel, Mr. Perez, asserted that this Court's recent decisions had created a broad exception from the Patent Rules that allow a plaintiff to first seek discovery before providing specific infringement contentions. He asserted that his exception allows ConnecTel to accuse over 100 products without providing specific infringement contentions until after discovery. Alternatively, ConnecTel counsel claimed that production of Cisco's data sheets referenced in footnotes satisfied the rules.

The parties followed this first meet and confer by scheduling an all-day session for March 25, at which session ConnecTel agreed to discuss its infringement contentions with more specificity and to discuss potential supplementation. At the March 25 teleconference, however, the parties expended an entire day conferring over just *one* of the 120 asserted claims with respect to only a *few* of the accused products. *See, e.g.,* Exhs. J, K. ConnecTel would not identify a single Cisco structure, process, algorithm or even high-level feature that it alleges to meet the claim elements. *See id*. ConnecTel also declined during the March 25 teleconference to provide facts that it indicated it had learned during its prefiling investigation. *See* Exh. K.

F. **ConnecTel's March 30, 2005 Supplemental Preliminary Infringement Contentions Decline To Address The Issues**

Following the all-day conference on Friday March 25, ConnecTel delivered supplemental PICs to Cisco on Wednesday, March 30, 2005. *See* Exh. G. ConnecTel's supplemental PICs declined to remedy the issues Cisco presented. ConnecTel still provided the same four infringement charts using the same "categories" to allegedly represent over one-hundred different accused products. *See id.* ConnecTel did not add any text whatsoever to its charts. ConnecTel's supplemental PICs continue to decline to mention even one specific accused product. *See id.*

Instead, ConnecTel's changes comprised cosmetic changes to its footnotes. Although ConnecTel added hundreds of footnotes to elements of dependent claims, those footnotes for the most part merely referred back to the preexisting footnotes containing the unhelpful string-cites. ConnecTel also supplied a third-party "nutshell" tutorial book on Cisco's IOS software, stating that it hoped the nutshell book would help Cisco understand its products. *See, e.g.,* Exh. G (cover letter); Exh. M. Of course, Cisco understands its products. The issue is what ConnecTel alleges to meet each element of each asserted claim.

Accordingly, Cisco determined it must file this motion. ConnecTel's failure to disclose its contentions is severely hampering Cisco's preparation of its responsive case and discovery.

## III. ARGUMENT

A. **This District's Patent Rules Require A Plaintiff To Provide Prompt And Detailed Preliminary Infringement Contentions**

Patent Rule 3-1 states, in relevant part:

Separately for each opposing party, the "Disclosure of Asserted Claims and Preliminary Infringement Contentions" shall contain the following information:

(c) *A chart identifying specifically where each element of each asserted claim is found within **each Accused Instrumentality***, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function . . . .

*See* Patent Rule 3-1 (emphasis supplied). As stated by the Court, the intent of these rules is to structure discovery, requiring plaintiffs to be prepared for their suit before discovery begins:

> As the Court said in *STMicroelectronics,* the Patent Rules are designed to streamline the discovery process. *Id.* at 755 (quoting *Network Caching Tech., LCC* [sic] *v. Novell, Inc.,* 2003 WL 21699799, *4-5 (N.D.Cal. 2003)).  They provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute.  The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun.

*See American Video Graphics, L.P. v. Electronic Arts, Inc.,* Case No. 6:04-CV-398, 2005 WL 567466 at * 2 (E.D.Tex. 2005) (attached as Exh. N).

Preliminary invalidity contentions that provide vague, conclusory language or that simply mimic language of the claims when allegedly identifying infringement do not meet this Court's rules, and hamper a defendant from preparing its responsive case.  *See American Video Graphics, L.P.,* 2005 WL 567466 at * 2 ("To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense."); *see also Network Caching Technology, LLC v. Novell, Inc.,* Case No. C-01-2079-VRW, 2002 WL 32126128 at *5-*6. (N.D.Cal. Aug. 13, 2002) (attached as Exhibit O) (ordering plaintiff to supplement PICs that "simply mimic[] the language of the claim"); *Motorola, Inc. v. STMicroelectronics, N.V. et al.,* 308 F.Supp.2d 754, 755 (E.D.Tex. 2004) (citing *Network Caching* with approval).

Notwithstanding the plain language of this Court's rule requiring "a chart specifically identifying where each element of each asserted claim is found in each Accused Instrumentality," this Court's expressed policy behind the rule supporting "high expectations as to plaintiffs' preparedness before suit," and ConnecTel's allegation in its complaint that Cisco is "*blatantly* infringing," ConnecTel has declined to provide any chart specific to any accused product, or any specific disclosure of how each element is allegedly found.  Accordingly, as explained below, ConnecTel should be ordered to promptly supplement its contentions to provide the required disclosure.

**B.      ConnecTel's Charts Do Not Disclose Preliminary Infringement Contentions For Each Accused Product**

ConnecTel's PICs do not meet the rules because they do not contain a chart that specifically identifies where each element of each claim is allegedly found in *each accused product*; rather, the PICs provide four charts for each of four alleged "product categories" created by ConnecTel.  *See generally* Exh. G.  Each of the charts for the four different alleged "product categories" is largely identical.  *Compare* in Exh. G page 1 of "Routers" chart with page 1 of "Switches" chart, page 1 of "Gateways and Other Products" chart, and page 1 of "IOS Software" chart.

Patent Rule 3-1(c) expressly requires ConnecTel to provide specific contentions for *each* accused product.  *See* Patent Rule 3-1(c) (requiring a chart "identifying specifically where each element of each asserted claim is found within **each** Accused Instrumentality.").  Patent Rule 3-1 does not have any provisions for "grouping" accused products.  Accordingly, ConnecTel's charts are immediately non-conforming because they do not address each specific product.

**C.      ConnecTel's Preliminary Infringement Contentions Fail To Specifically Identify Where Each Element Of Each Asserted Claim Can Be Found**

ConnecTel's PICs also fail to follow the rules because they do not include a chart "identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."  Rather, ConnecTel's PICs mimic claim language without providing any specific identification of how ConnecTel alleges that each of over 100 accused products meets each element of 120 asserted claims.  For the eleven independent claims from the four patents-in-suit, as shown below, ConnecTel either copies claim language verbatim or provides only vague statements that it jumbles together in one paragraph that it repeats over and over.  For all 109 dependent claims from all four patents-in-suit, ConnecTel copies the claim language verbatim.

Independent claim 1 of the '404 patent is discussed below as an example for independent claims.  ConnecTel's chart on "Cisco's Routers" for that claim consists of conclusory statements

8

that "Cisco's Routers" perform the claim without identifying specifically where each element is found:

**ConnecTel's PICs Mimic The Claim Language**
**Without Identifying Allegedly Infringing Structures Or Processes**

| Claims | Cisco Routers | |
|---|---|---|
| 1. In an apparatus comprising a plurality of interfaces, each of said interfaces interconnected with an associated data path capable of transferring data a towards a remote destination, each of said data paths having predetermined parameters associated therewith stored in a memory and variable parameters associated therewith, a method of servicing the data by examining the data and determining which of said plurality of data paths should be utilized for transferring the data towards the remote destination, said method comprising: | The Cisco Routers have more than one interface interconnected with an associated data path (for example media type, e.g. wire, twisted pair, fiber, wireless, etc.) that is capable of transferring data a towards a remote destination.[133] In the Cisco Routers, each of the data paths has associated with it predetermined parameters (such as a configuration of the data path)[134] stored in a memory. In the Cisco Routers, each of the data paths has associated with it variable parameters. The Cisco Routers service data by examining the data and determining[135] which of the more than one data path should be utilized for transferring the data towards the remote destination. The Cisco Routers define | |
| a) defining one or more first variable parameters for use in examining the data; | one or more first variable parameters (for example, call type (e.g. voice, fax, data, etc.))[136] for use in examining the data. The | No identification of what performs "defining" step in subpart 1(a) |
| b) receiving the data; | Cisco Routers receive data, and examine the received data. The Cisco Routers identify the | No identification of where "receiving," "examining," or "identifying" steps in subparts 1(b)-(d) are found. *Simply verbatim quote of claim language.* |
| c) examining the received data; | examined data which matches one of the one or more first variable parameters. The Cisco | |
| d) identifying the examined data which matches said one of the one or more first variable parameters; | Routers analyze a property of the identified data to be transferred (for example, Quality of Service (QoS) parameter, and/or security | |
| e) analyzing a property of the identified data to be transferred; | requirements of the data).[137] The Cisco Routers measure a second variable parameter (for example, latency or jitter)[138] for at least one path. The Cisco Routers analyze the | No identification of what performs "analyzing" or "measuring" steps in subparts 1(e)-(g). For 1(g), *simply verbatim quote of claim language*. |
| f) measuring a second variable parameter for at least one path; | measured second variable parameter and the predetermined parameters. The Cisco Routers | |
| g) analyzing said measured second variable parameter and said predetermined parameters; | determine[139] which of the paths provides an optimal set of characteristics for transferring the data towards the remote destination in accordance with the analyzed second variable parameter, predetermined parameters, and analyzed data property. The Cisco Routers transfer the identified data to the remote | *Simply verbatim quote of claim language* for elements 1(h) and (i) No identification of where "determining" step is allegedly found. |
| h) determining which of said paths provides an optimal set of characteristics for transferring the data towards the remote destination in accordance with said analyzed second variable parameter, predetermined parameters, and analyzed data property; and | | |

| Claims | Cisco Routers |
| --- | --- |
| i) transferring the identified data to the remote destination. | destination. |
| | |

*See* Exh. G, Attachment A at 18-19.  As shown above, for several claim elements – "receiving,"
"examining," "identifying," "determining," and "transferring"– ConnecTel simply copied the
claim language verbatim.  For a few elements, it sprinkles in a few terms, but does not provide a
specific explanation of where these elements are alleged to be found.  It is not enough for
ConnecTel to assert that Cisco's products "determine which of the paths provides an optimal set
of characteristics" without specifically identifying how that is done or what it is in Cisco's
products that does it.  *See, e.g., Network Caching Tech.,* 2002 WL 32126128 at *6.

     ConnecTel's "Router" chart for the other asserted independent claims of the '404 patent
(claims 35 and 69) are no different; ConnecTel for the most part "cut and pasted" the text from
claim 1 into its PICs for those other two claims.  *See, e.g.,* Exh. G, Attachment A at 19-20, 22.
Further, these same deficient PICs were in turn "cut and pasted" into the other three product
"category" charts.  *See id.* at Attachments B, C, D.

     ConnecTel's PICs for the 109 dependent claims repeat the claim language verbatim and
provide no substance.  For example:

THIS SPACE INTENTIONALLY LEFT BLANK

**ConnecTel's PICs For The Dependent Claims Copy The Claim Language Verbatim**

| | |
|---|---|
| 2. The method of claim 1 in which said determining step analyzes a set of programmed user priorities in determining which of said paths provides the optimal set of characteristics for transferring the file to the remote destination. | The Cisco Routers analyze a set of programmed user priorities in determining which of the paths provides the optimal set of characteristics for transferring the file to the remote destination. [7] |
| 3. The method of claim 2 in which the user priorities are predefined and stored in said switching system memory. | In the Cisco Routers, the user priorities may be predefined and stored in the memory. [8] |
| 4. The method of claim 3 in which said predefined user priorities may be changed by a user prior to said analysis step. | In the Cisco Routers, the predefined user priorities may be changed by a user prior to analyzing the programmed user priorities. [9] |
| 5. The method of claim 2 in which telecommunications path variable parameters comprises the data transfer speed of said path at a given point in time. | In the Cisco Routers, the path variable parameters may be the data transfer speed of the data path at a given point in time. [10] |

*See, e.g.,* Exh. G, Attachment A at 2.  The PICs for all other dependent claims are the same in style.

For a few claims, ConnecTel did not even assert that Cisco's products meet the claim elements, instead conditionally contending that "*if*" Cisco's products meet the claim language, they infringe, which is the ultimate in conclusory statements:

| | |
|---|---|
| 19. The method of claim 1 further including: | If the Cisco Routers receive requests to service other data (for example, voice data) while servicing the current data (for example, fax data), the Cisco Routers suspend servicing the current data and services the other data so that the other data can be serviced before continuing with the servicing of the current data. [142] |
| a) receiving a request to service other data while servicing the current data; | |
| b) suspending the servicing of the current data; and | |
| c) servicing the other data; | |
| d) wherein the other data can be serviced before continuing with the servicing of the current data. | |

*See, e.g.,* Exh. G, Attachment A at 19.

11

### D.   ConnecTel's Footnotes Do Not Satisfy Its Obligations Under The Rules To Provide A Chart Specifically Identifying Where Each Element Is Found

ConnecTel's footnotes referencing Cisco datasheets fail to provide a chart that identifies specifically where each element is found in each accused product.  First, most claim elements do not have footnote references.  *See, e.g.,* Exh. G, Attachment A at 1, 18-19 and Part III.C., above. Second, ConnecTel failed to provide any specific link between claim elements and the referenced data sheets.  Instead, ConnecTel's footnotes provide blanket string-cites to pages of attached documents without specifically indicating where each element can be found in them. *See, e.g.,* Exh. G, Attachment A at 24-32.  Further, there are only a handful of footnotes with citations to any documents at all (*i.e.,* approximately ten footnotes out of more than 600 have document references).  The vast majority of the 600-plus footnotes simply cross-reference other footnotes that ultimately refer back to the same *ten* footnotes:

**ConnecTel's Footnotes Simply Refer Back To Other Footnotes**

### ATTACHMENT A

#### Notes

[112] *See supra* n. 7.

[113] *See supra* n. 7.

[114] *See supra* n. 4.

[115] *See supra* n. 1.

[116] *See supra* n. 2.

[117] *See supra* n. 5.

[118] *See supra* n. 3.

[119] *See supra* n. 7.

[120] *See supra* n. 7.

[121] *See supra* n. 1.

[122] *See supra* n. 2.

*See, e.g.,* Exh. G, Attachment A at 30.

The *Network Caching Tech.* court found this specific practice to be improper:

> [Plaintiff] NCT provides no link between the quoted passages and the infringement contention that simply mimics the language of the claim . . . For example, NCT provides no explanation of how the proxies described in the literature map onto the claim language. Nor does NCT describe how "couple cluster technology" is relevant. In essence, NCT has provided no further information to defendants than the claim language itself. This is plainly insufficient.

*See Network Caching Tech.,* 2002 WL 32126128 at *6.

During the parties' meet and confer process, ConnecTel was unable to show to Cisco where in these documents each element could be found. Cisco spent an entire day in conference with ConnecTel where ConnecTel was to provide further specifics and the parties were to discuss an appropriate supplement. Even after a full day discussing one claim and a few accused products, Cisco was unable to obtain from ConnecTel an explanation of how even one claim was infringed by a few products. *See, e.g.,* Exhs. J, K, L. ConnecTel has the burden of disclosing this information. It is not Cisco's burden to try to pull the information out of ConnecTel. Nevertheless, Cisco tried to get further information without Court intervention, but was not successful.

### E.    ConnecTel Must Provide All Facts From Its Prefiling Investigation

During the meet and confer process, ConnecTel indicated that it had not investigated all of the more than 100 accused products for infringement, but that it had only investigated one or some limited number of them. ConnecTel indicated it had more undisclosed facts on the few products it had investigated, but declined to disclose those facts during the conference or to supplement its PICs with that information. According to Rule 11, however, ConnecTel was required to find each element of each asserted claim in each of the accused Cisco products before alleging they "blatantly infringed" ConnecTel's patents.[2] The Patent Rules require ConnecTel to provide in its PICs all facts discovered during any prefiling investigation, which are to be treated the same as detailed interrogatory responses:

---

[2]   Rule 11 requires a patent plaintiff, before suit, to determine that each element of each asserted claim is infringed by each accused product. *See View Eng'g Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000).

> Patent LR 3-1 therefore takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery.  As NCT admits, a discovery request requires the [sic] NCT to provide the facts currently known to NCT.  See NCT Opp (Doc # 158) at 20.  Any facts discovered during its prefiling investigation necessarily come within the facts know to NCT.  Thus, NCT's factual inquiry under FRCP 11 must be read as coming within the bounds of Patent LR 3-1.  Put differently, NCT must provide in its PICs the relevant facts it obtained in its prefiling inquiry.  Thus, the standard of FRCP 11 prefiling inquiry establishes a minimum level of detail that Patent LR 3-1 requires.

*See Network Caching Tech.,* 2002 WL 32126128 at *6; *see, e.g., American Video Graphics, L.P.,* 2005 WL 567466 at * 2 ("The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun.").

### F.   Recent Decisions Under The Patent Rules Support Cisco's Motion

This Court's two recent decisions regarding PIC's support Cisco's motion.  In *American Video Graphics,* the Court ordered the plaintiff to supplement its PICs, which, like here, merely mimicked the claim language.  *See American Video Graphics, L.P.,* 2005 WL 567466 at 2-3.

Although the Court denied defendant's motion to compel in *STMicroelectronics,* the plaintiff's PICs in that case were far more detailed that ConnecTel's PICs here.  There, the plaintiff's PICs identified specific processors within the accused products and explained how specific structures and processes within those processors allegedly met the claim elements.  *See, e.g.,* Exh. P (Motorola's infringement chart identifying for the claim element "a data processor have a first and second modes of operation" the "ARM RISC processor embedded in STM products," and in particular, the "ARM/THUMB state and DEBUG state modes of operation . . . .").  Moreover, unlike here, the plaintiff in *STMicroelectronics* provided pinpoint citations to specific sections and figures in supporting documents for *every element* of *every asserted claim. See id.*  And, unlike here, the plaintiff in *STMicroelectronics* had not accused over 100 products that comprised the majority of products sold by a billion dollar enterprise, without identifying how even one of those products allegedly infringes.

**IV.      CONCLUSION**

For the foregoing reasons, Cisco respectfully requests that this Court compel plaintiff ConnecTel, LLC to provide supplemental Preliminary Infringement Contentions pursuant to Patent Rule 3-1(c) within twenty (20) days that (1) specifically identify where each of the elements of each asserted claim can allegedly be found in the accused products; and (2) include all facts currently known to ConnecTel concerning its infringement contentions.

Dated:  April 21, 2005

Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/Sam Baxter

By: _____
     Sam F. Baxter
     Attorney-In-Charge for Defendant
     State Bar No. 01938000
     505 East Travis Street, Suite 105
     P.O. Box O
     Marshall, Texas  75670
     Telephone:  (903) 927-2111
     Facsimile:  (903) 927-2622
     E-Mail:  Sbaxter@mckoolsmith.com

     Attorneys for Defendant
     CISCO SYSTEMS, INC.

Of Counsel:

John M. Desmarais (admitted *pro hac vice*)
jdesmarais@kirkland.com
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Eric R. Lamison (admitted *pro hac vice*)
elamison@kirkland.com
Adam R. Alper (admitted *pro hac vice*)
aalper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on

counsel listed below via ECF or U.S. Mail on this 21st day of April 2005.


/s/ Sam Baxter_____
Sam Baxter


Daniel F. Perez
Mark Allan Calhoun
Sanford E. Warren, Jr.
Winstead Sechrest & Minick P.C.
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270

Earl Glenn Thames, Jr.
110 North College
500 Plaza Tower
Tyler, Texas 75702

## **CERTIFICATE OF CONFERENCE**

Counsel for Cisco has conferred with counsel for ConnecTel in a good faith attempt to resolve this motion.  However, this motion is opposed by ConnecTel.

April 21, 2005                                        /s/ Sam Baxter_____
                                                          Sam Baxter