IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

|  |  |
|---|---|
| CONNECTEL, LLC<br><br>             Plaintiff,<br><br>     v.<br><br>CISCO SYSTEMS, INC.,<br><br>             Defendant. | Civil Action No. 2-04CV-396 LED |

**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL PATENT RULE 3-1 PRELIMINARY INFRINGEMENT CONTENTIONS**

## I.    INTRODUCTION

Shortly before ConnecTel responded to this motion, ConnecTel filed an amended complaint that included two additions:  a prayer for almost $9 billion in damages[1], and allegations individually listing over 100 accused products as "blatantly infringing."  *See* Exh. 1 at 10, attached.  ConnecTel did not plead these accusations "on information and belief"; rather, ConnecTel avers that it now *knows* how each device is alleged to "blatantly infringe."  Notwithstanding ConnecTel's new allegations, ConnecTel declines to specifically identify where infringement is found in each accused product in its Preliminary Infringement Contentions ("PICs").  As demonstrated by Cisco's moving papers, ConnecTel's PICs do not include a chart specifically identifying where each element of each asserted claim is found in each accused product because:

- ConnecTel's PICs do not include an infringement chart addressing each of the 100 accused products.  Instead, they provide four charts referencing only four "categories" of products, and those four charts are basically identical.

- ConnecTel's four charts do not refer in their text to any Cisco accused product.

- ConnecTel's four charts do not refer in their text to a single structure, process, algorithm, feature or function in any of an accused product, and instead mimic claim language.  ConnecTel's color-coded excerpt in its brief, taken from its PICs on claim 1, omits the key claim elements for that claim as well as the dependent claims, both of which merely mimic the claim language.

- ConnecTel's footnotes do not identify where each element of each asserted claim is found within each accused product.  Only about 10 of the approximately 600 footnotes has any text, and the footnote text declines to link any specific text in any of the documents to a specific claim element.

- ConnecTel says it knows facts from its Rule 11 prefiling investigation that it has not disclosed.

ConnecTel's two responses to Cisco's motion does not remedy these issues.  First, ConnecTel claims that it met its obligations by attaching a box of Cisco product data sheets that its PICs refer to in footnotes.  ConnecTel hopes this volume of documents will persuade the

---

[1]   That claim is legally improper because it seeks six billion dollars in alleged damages for "future royalties" for future sales to allegedly occur a decade after the case will have been tried.  The allegation is not founded in law and, is not a privileged communication, and was inserted solely for ConnecTel to promote its case in the media.

1

Court that ConnecTel met its obligations. But, as Cisco previously demonstrated, ConnecTel's footnote references to pages in Cisco product documents decline to identify any specific text on any specific page for any element of any claim. Only about ten of ConnecTel's approximately 600 footnotes even have those document citations, with the remaining 590 footnotes simply cross-referencing the same non-substantive ten footnotes.

Indeed, Cisco counsel spent a *full day* in conference with ConnecTel to try to ascertain what material on the pages ConnecTel footnoted provide the basis for ConnecTel's allegations with respect to just *one asserted claim and a few products*. ConnecTel was unable to identify a single structure, process, feature or function on those pages that it said met any claim element. Accordingly, the footnote references to Cisco's product literature – which ConnecTel submitted in 29 parts as Exhibit A to its brief – are not substitutes for the required chart specifically identifying where each element is found in each accused product.

Second, ConnecTel acknowledges a need to supplement its PICs but asserts, based on its reading of this Court's decisions in *American Video Graphics* and *STMicroelectronics,* that it is entitled to stand on its non-informative PICs until it serves Final Infringement Contentions ("FICs") at some later unspecified date, potentially after claim construction discovery and *Markman* proceedings have concluded. *See, e.g.,* Opp. Br. at 5. But this Court never created such a broad exception to Rule 3-1(c). To the contrary, in *American Video Graphics*, this Court required the plaintiff to supplement its PICs within 30 days after receiving access to the defendant's product information. Cisco is not seeking the "final" iteration of ConnecTel's infringement contentions; rather Cisco is seeking an understanding of where ConnecTel contends each of the claim elements can be found in the accused products. This Court's decisions at a minimum support the relief Cisco actually seeks – *i.e.,* an order compelling ConnecTel to promptly supplement its PICs.

ConnecTel's insufficient PICs are prejudicing Cisco, and Cisco should not be left in the dark until after *Markman* concludes. To the contrary, with an important June 16 Patent Local Rule deadline for preliminary claim constructions approaching, Cisco needs to know specifically

2

how ConnecTel is applying the elements of its claims to Cisco's accused products. ConnecTel's insufficient PICs unfairly hinder Cisco's ability to determine what claim elements are actually material and in dispute, and, of those, which should be raised to the Court in claim construction briefing. In addition, ConnecTel's PICs unfairly hinder Cisco's ability to prepare its non-infringement defenses because it is left to guess where ConnecTel is alleging infringement to occur in over 100 products. ConnecTel's PICs also unfairly hinder Cisco's preparation of invalidity defenses, which will be informed by the way ConnecTel applies its claims.

Accordingly, Cisco respectfully seeks an order compelling ConnecTel to promptly supplement its PICs. ConnecTel currently possesses specific facts from its prefiling investigation supporting its infringement allegations that it has not provided in its PICs and is collecting more each day as it reviews Cisco's document productions. ConnecTel acknowledges the need to supplement. The parties' preliminary proposed claim construction disclosures are due June 16, and Cisco is increasingly prejudiced. Cisco respectfully asks the Court to compel ConnecTel to supplement its PICs by June 6, ten days before the date the parties' preliminary claim constructions are due.

## II.    ARGUMENT

### A.    ConnecTel's PICs Do Not Specifically Identify Where Each Element Of Each Asserted Claim Is Found In Each Accused Product

#### 1.    ConnecTel's Charts Do Not Address Each Accused Product

ConnecTel's PICs do not contain a chart that specifically identifies where each element of each claim is allegedly found in *each accused product*; rather, the PICs provide four charts for each of four alleged "product categories" created by ConnecTel. *See generally* Exh. G. Each of the charts for the four different alleged "product categories" is largely identical. *Compare* in Exh. G page 1 of "Routers" chart with page 1 of "Switches" chart, page 1 of "Gateways and Other Products" chart, and page 1 of "IOS Software" chart. The charts do not put Cisco on notice of how each accused product allegedly infringes each claim of each patent-in-suit. ConnecTel does not address this issue in its responsive brief.

### 2. ConnecTel's PICs Do Not Identify Specifically Where Each Element Of Each Asserted Claim Is Found In The Accused Products

ConnecTel's PICs do not identify "specifically where each element of each asserted claim is found within each Accused Instrumentality." *See* Patent Rule 3-1(c). Rather, ConnecTel's PICs mimic claim language without providing any specific identification of how ConnecTel alleges that each of over 100 accused products meets each element of 120 asserted claims. ConnecTel's PICs do not refer to even one specific Cisco product and do not identify any structure, process, algorithm, feature or function in their text with respect to each asserted claim element. ConnecTel's opposition says that it provided a "specific description of the products," but that is not shown in the chart. *See, e.g.,* Opp. Br. at 2. ConnecTel's color-coded reproduction of the preamble of one claim from its PICs omits the key elements of that claim as well as the dependent claims, all of which merely mimic the claim language. *See* Opp. Br. at 11.

### B. ConnecTel's Footnotes Do Not Satisfy Its Obligation To Provide A Chart Specifically Identifying Where Each Element Is Found In Each Product

ConnecTel contends that it went "above and beyond" its obligation under Patent Rule 3-1(c) by providing footnote references to Cisco product documents. *See* Opp. Br. at 4, 9-12 (providing a "four step block flow diagram" explaining how ConnecTel provided a cite to a product document for each accused product). But, those footnotes do not provide sufficient information to permit Cisco to determine how ConnecTel alleges the accused products infringe the asserted claims.

First, most claim elements do not have footnote references. *See, e.g.,* Exh. G, Attachment A at 1, 18-19. Second, ConnecTel declined to provide any specific link between each claim element and the text contained in the referenced data sheets. ConnecTel does not identify the specific text in the documents that corresponds to each claim element. Instead, ConnecTel's footnotes provide blanket string-cites to pages of attached documents without specifically indicating where each element can be found in those pages. *See, e.g.,* Exh. G, Attachment A at 24-32. Indeed, there are only a handful of footnotes with citations to any documents at all – only about ten footnotes out of more than 600 footnotes refer to documents. The vast majority of the

4

600-plus footnotes simply cross-reference other footnotes that ultimately refer back to the same *ten* footnotes, none of which specifically identify where there is text that allegedly corresponds to each claim element.

ConnecTel's March 30 supplemental PICs made only cosmetic changes to its original PICs. Its original PICs had only copied the dependent claim language verbatim and had no footnotes. Following the parties' all day meet-and-confer discussions about infringement, ConnecTel served its supplement that made no changes to the text, and simply added footnotes which referred back to preexisting footnotes that themselves contain unhelpful string-cites to product documents. ConnecTel's PICs leave the reader guessing as to where infringement is, and are improper. *See Network Caching Tech. v. Novell, Inc.,* 2002 WL 32126128 at *6 (N.D. Cal. Aug. 13, 2002) (Exh. O) ("[Plaintiff] NCT provides no link between the quoted passages and the infringement contention that simply mimics the language of the claim . . . For example, NCT provides no explanation of how the proxies described in the literature map onto the claim language. Nor does NCT describe how "couple cluster technology" is relevant. In essence, NCT has provided no further information to defendants than the claim language itself. This is plainly insufficient.").

      **C.**    **ConnecTel Was Unable To Correspond Any Specific Text On Any Page To Each Claim Element**

When Cisco asked ConnecTel during the parties' meet and confer to identify where in those pages each of the claim elements could be found, ConnecTel was unable to point to a single structure, process, feature or function on those pages corresponding to the claim elements. *See* Exhs. J, K. The parties spent a full day conferring about just *one* of the 120 asserted claims with respect to only a few of the accused products. *See id.* During that session, Cisco walked through the specific pages cited by ConnecTel in its footnote references that ConnecTel contends correspond to certain of the claim elements. *See id.* In so doing, ConnecTel was unable to identify a single Cisco structure, process, algorithm, or even high-level feature on those pages that it alleges meets the claim elements. *See id.* Although it is not Cisco's burden to try to pull

the required information out of ConnecTel, Cisco in fact tried to get the information through discussion, without Court intervention, but was unsuccessful.

ConnecTel has not pleaded this case on "information and belief," but instead has specifically pleaded that over 100 products allegedly "blatantly infringe" its asserted 120 patent claims.  *See* Exh. 1 at 10.  Why then is the infringement not "blatantly" shown in the PICs?  *See Hewlett-Packard v. EMC Corp.,* 2003 WL 23142198 at *1 (N.D. Cal. July 9, 2003) ("In the present case, Plaintiffs have alleged that one or more of Defendant's products do infringe the claims of seven patents.  This allegation was not made on information and belief.  The court thus assumes that . . . Plaintiffs do know how at least one of Defendant's products infringes at least one of the patents.") (Exh. 2, attached).

### D. ConnecTel Agrees That It Has Not Provided Facts From Its Prefiling Investigation

ConnecTel concedes that it has not provided all the facts from its prefiling investigation. *See* Opp. Br. at 13.  This is not proper, for ConnecTel must provide all facts known to it supporting its infringement contentions in its PICs.  *See Network Caching Tech.,* 2002 WL 32126128 at *4 ("Any facts discovered during its prefiling investigation necessarily come within the facts known to NCT.  Thus, NCT's factual inquiry under FRCP 11 must be read as coming within the bounds of Patent LR 3-1.  Put differently, NCT must provide in its PICs the relevant facts it obtained in its prefiling inquiry.  Thus, the standard of FRCP 11 prefiling inquiry establishes a minimum level of detail that Patent LR 3-1 requires. NCT asserts that it has included all relevant facts in its PICs and cannot amend them again without further investigation."); *American Video Graphics, L.P.,* 2005 WL 567466 at * 2 (E.D. Tex. Mar. 11, 2005) (Exh. N) ("The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun.").

ConnecTel's claim that those facts are privileged is inconsistent with a well-established rule that the attorney-client and work product privileges *never* apply to the *facts underlying a*

claim. *See Network Caching Tech.*, 2002 WL 32126128 at *4; *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. . . ."); *Swidler v. U.S.*, 524 U.S. 399, 412 (1998) ("The privilege does not 'protect disclosure of the underlying facts by those who communicated with the attorney'") (quoting *Upjohn*, 449 U.S. at 395); *U.S. v. El Paso Co.*, 682 F.3d 530, 538 n.10 (5th Cir. 1982) (The attorney-client privilege does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney."); *In re Int'l Systems and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) ("We know that the work product immunity protects only the documents themselves and not the underlying facts"); *Resolution Trust Corp. v. Dabney*, 73 F.2d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product."); *Blum v. Spectrum Restaurant–Employees Group Life and Supp. Life Plan*, 2003 WL 367059 at 2 n.1 (E.D. Tex. Feb. 18, 2003) ("The attorney-client privilege does not protect underlying facts."); *Myers v. City of Highland Village, Texas*, 212 F.R.D. 324, 326 (E.D. Tex 2003) ("It is indeed true that the [attorney-client] privilege only protects communications, not facts.").

    None of the cases cited by ConnecTel suggest otherwise, and some have nothing to do with this issue at all. *See Hickman v. Taylor*, 329 U.S. 495, 513, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947) (giving a general overview of the application of work product immunity and noting "Denial of production of this nature does not mean that any material, non-privileged facts can be hidden from the petitioner in this case."); *Power Mosfet Tech., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406-07 (holding that regional circuit law, in this case Fifth Circuit case law, governs in reviewing the denial of a motion for a new trial and in reviewing sanctions under Rule 11); *Kent Corp. v. NLRB*, 530 F.2d 612 (5th Cir. 1976) (generally discussing the application of work product privilege to government attorneys); *EZ Loader Boat Trailers, Inc. v. Shoreline Trailer*

*Sales, Inc.*, 1979 U.S. Dist. LEXIS 8153 (N.D. Tex. 1979) ("The [work product] rule, however, does not now and never has shielded the facts themselves from discovery, even though these facts are contained in work product materials and were only learned by virtue of counsel's investigations."); *Burlington Ind. v. Exxon Corp.*, 65 F.R.D. 26 (D. Md. 1974) (generally stating that attorney-client and work product privileges apply in patent cases).

### E. Cisco Is Not Seeking "Final" Infringement Contentions

ConnecTel contends that Cisco seeks to compel "final" infringement contentions before discovery is exchanged. *See, e.g.,* Opp. Br. at 6. That is not correct. Rather, Cisco believes it is unfairly prejudicial to Cisco's abilities to provide Patent Rule and other discovery, as well as the preparation of its defenses, if ConnecTel is able to avoid providing sufficient PICs until a much later date, *e.g.,* after claim construction discovery and *Markman* proceedings conclude. Even ConnecTel acknowledges that it must supplement these PICs, but contends that it need not do so until after claim construction finishes. In the meantime, Cisco will have been denied the opportunity to understand why over 100 products are alleged to infringe, and denied the opportunity to prepare appropriate defenses and disclosures responsive to those contentions.

Cisco has provided and continues to provide ConnecTel with discovery. In contrast, ConnecTel has never – during the parties' meet and confer or in its opposition – specifically committed to provide any supplement at any time. Moreover, Cisco is not suggesting that ConnecTel be forced to supplement its PICs without discovery. Cisco is not seeking "final" infringement contentions, but merely PICs that comply with Patent Rule 3-1; *i.e.,* identify specifically where each element of each asserted claim can be found in each accused product.

### F. This Court's Opinions In The *American Video Graphics* And *STMicroelectronics* Cases Support An Order Compelling ConnecTel To Provide A Prompt Supplement

ConnecTel's reliance on the *American Video Graphics* and *STMicroelectronics* cases is misplaced. In *American Video Graphics,* the Court ordered the plaintiff to promptly supplement its PICs, which, like here, merely mimicked the claim language. *See American Video Graphics,*

8

*L.P.,* 359 F. Supp. 2d 558 at 560.  The Court required the plaintiff to provide *specific references* to the defendant's source code *within 30 days* of receiving it.  *See id.* at 561.

Although the Court denied defendant's motion to compel in *STMicroelectronics,* the plaintiff's PICs in that case were far more detailed than ConnecTel's PICs here.  *See, e.g.,* Exh. P (Motorola's infringement chart identifying for the claim element "a data processor have a first and second modes of operation" the "ARM RISC processor embedded in STM products," and in particular, the "ARM/THUMB state and DEBUG state modes of operation . . . .").  Moreover, unlike here, the plaintiff in *STMicroelectronics* had not asserted 120 claims against over 100 products that comprised the majority of products sold by a billion dollar enterprise, without identifying how even one product allegedly infringes one claim.

### G. Cisco Is Prejudiced By Insufficient PICs

Cisco is prejudiced by ConnecTel's insufficient PICs.  With the deadline for the parties' preliminary proposed claim constructions approaching on June 16, ConnecTel has provided little direction on how it is applying the claims to Cisco's products.  This hinders Cisco's ability to identify what aspects of the claim elements are actually in dispute, and, of those, which should be briefed and presented to the Court for claim construction.  Similarly, the insufficient PICs unfairly prejudice Cisco's preparation of its non-infringement and invalidity defenses because ConnecTel has declined to reveal to Cisco how ConnecTel is applying the claims.  Cisco is left to guess where within over 100 accused products infringement is supposedly occurring.  This is distracting and prejudicing Cisco from responding to the allegations.  As for invalidity, Cisco worked very diligently to serve its timely Patent Rule 3-3 Preliminary Invalidity Contentions on ConnecTel to the best of Cisco's abilities on April 15, but was forced to do so without having the information from ConnecTel concerning its specific infringement theories, which Cisco was previously entitled in order to fully address invalidity of ConnecTel's patents.  Cisco remains entitled to rule-compliant infringement contentions.

### H.    The Court Should Not Sanction Anyone

ConnecTel's request for sanctions is not well-founded.  Cisco has not filed its motion for any dilatory purpose.  Cisco did not ask for sanctions or to delay these proceedings.  Rather, Cisco asked for an order compelling ConnecTel to promptly supplement its PICs, to enable the orderly progress of this case in accordance with this Court's rules and orders.  ConnecTel's PICs simply do not inform Cisco of ConnecTel's infringement allegations, and during the meet-and-confer process, ConnecTel declined to provide the omitted details.[2]

ConnecTel contends that Cisco is using this motion to delay this case, but it is ConnecTel, not Cisco, that is holding up the orderly procession of discovery in this case by failing to provide the facts supporting its infringement contentions.  Unlike ConnecTel, Cisco met its disclosure obligations under the Patent Rules and the Court's Discovery Order, providing highly detailed invalidity charts to the best of its abilities given ConnecTel's failure to provide rule-compliant PICs.  Indeed, what Cisco seeks here is an order to assist the orderly progress of this case by compelling ConnecTel to provide supplemental PICs before even more Patent Rule disclosures are due on June 16 under this Court's discovery and docket control order.

### III.    CONCLUSION

For the foregoing reasons, Cisco respectfully requests that this Court compel plaintiff ConnecTel, LLC to provide supplemental Preliminary Infringement Contentions pursuant to Patent Rule 3-1(c) by June 6, 2005 that (1) specifically identify where each of the elements of each asserted claim can allegedly be found in the accused products; and (2) include all facts currently known to ConnecTel concerning its infringement contentions.

---

[2]    ConnecTel states that Cisco "declined to participate in any further teleconferences to resolve the issues" (*see* Opp. Br. at 4), but omits the fact that ConnecTel declined to provide any meaningful detail during an all day conference and then it followed the conference with a supplemental set of PICs that declined to address any of the issues Cisco presented.  *See, e.g.,* Exh. G.  ConnecTel agreed to participate in further conferences, but declined to allow any progress to be made in them.  *See id.*  ConnecTel's offer to "continue the meet and confer process" (*see* Opp. Br. at 4) would have simply delayed Cisco from the prompt relief it needs.

|  |  |
|---|---|
| Dated: May 12, 2005 | Respectfully submitted,<br><br>**McKOOL SMITH, P.C.**<br><br>　　/s/Sam Baxter<br>By: _____<br>　Sam F. Baxter<br>　Attorney-In-Charge for Defendant<br>　State Bar No. 01938000<br>　505 East Travis Street, Suite 105<br>　P.O. Box O<br>　Marshall, Texas  75670<br>　Telephone:  (903) 927-2111<br>　Facsimile:  (903) 927-2622<br>　E-Mail:  Sbaxter@mckoolsmith.com<br><br>　Attorneys for Defendant<br>　CISCO SYSTEMS, INC. |

Of Counsel:

John M. Desmarais (admitted *pro hac vice*)
jdesmarais@kirkland.com
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Eric R. Lamison (admitted *pro hac vice*)
elamison@kirkland.com
Adam R. Alper (admitted *pro hac vice*)
aalper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on counsel listed below via ECF or U.S. Mail on this 12th day of May, 2005.

        /s/ Sam Baxter_____
        Sam Baxter

Daniel F. Perez
Mark Allan Calhoun
Sanford E. Warren, Jr.
Winstead Sechrest & Minick P.C.
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270

Earl Glenn Thames, Jr.
110 North College
500 Plaza Tower
Tyler, Texas 75702