IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CONNECTEL, LLC** § | | |
| Plaintiff § | | |
| § | | |
| vs. § | CASE NO. 2:04-CV-396 | |
| § | | |
| **CISCO SYSTEMS, INC.** § | | |
| Defendant § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are ConnecTel's motions to compel (Docket No. 114) and to strike (Docket No. 132). As stated at the hearing, the Court **GRANTS** in part and **DENIES** in part the motion to compel. Cisco is to produce a Rule 30(b)(6) witness for up to six hours of deposition testimony on the topics discussed at the hearing. Also as stated at the hearing, the Court **DENIE**S ConnecTel's motion to strike for the reasons below.

**BACKGROUND**

When ConnecTel brought this suit, it alleged that over 100 Cisco products infringed the 120 claims of United States Patent Nos. 6,016,307; 6,144,641; 6,454,594; and 6,473,404. The case is scheduled for trial in August 2006—just seven weeks from now. Throughout the litigation, Cisco has contended that its products do not infringe, ConnecTel's patents are invalid and unenforceable, and that ConnecTel's patents are unenforceable because the patentees were guilty of inequitable conduct before the Patent and Trademark Office. As an affirmative defense, Cisco has also alleged that ConnecTel's claims are barred unclean hands.

In July 2005, in response to the Court's order, ConnecTel narrowed its asserted claims to

1

twenty-seven claims of the four patents-in-suit and reduced the number of accused products to seventy. On April 11, 2006, Cisco filed its expert report regarding inequitable conduct. On April 20, 2006, ConnecTel reduced its asserted claims to twenty-three and reduced the accused product families to twenty. Prior to this reduction, ConnecTel had accused products with either of two components or features: OER and H.323. With this reduction, ConnecTel only accused products with OER.

On April 28, 2006, ConnecTel withdrew its claims against Cisco as to the '594 and '404 patents, and ConnecTel executed a royalty-free covenant not to sue to Cisco as to these patents. ConnecTel filed its Third Amended Complaint that did not include claims relating to the '594 and '404 patents. Within the normal time period to answer, Cisco filed its Amended Answer in which it included two new counterclaims: a declaratory judgment claim that ConnecTel's unclean hands bars enforcement of the two remaining patents and a claim for unfair business practices under California law.

ConnecTel now moves to strike those new claims because Cisco did not seek the Court's leave to assert these new claims. The deadline for the parties to amend their pleadings prior to claim construction was August 19, 2005. The deadline for the parties to amend their claims after claim construction was originally May 19, 2006, but at the parties' request the Court extended that deadline to June 2, 2006. Cisco filed its Amended Answer well before June 2, 2006.

## APPLICABLE LAW

Federal Rule of Civil Procedure 16(b) allows a party to modify the Court's Docket Control Order upon a showing of good cause. FED. R. CIV. P. 16. The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it cannot reasonably meet the scheduling

deadlines. *S&W Enters., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003). The Court has broad discretion to allow scheduling order modifications and considers four elements to determine if modification is appropriate: (1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice. *Id.* at 536. A party's failure to meet a deadline due to mere inadvertence is equivalent to no explanation at all. *Id*.

## ANALYSIS

ConnecTel argues that Cisco's unclean-hands and unfair-business-practices claims should be struck because Cisco did not seek the Court's leave before amending its pleading. Cisco argues that it did not need the Court's leave because its Amended Answer was a timely response to ConnecTel's amended complaint and filed before the Court's June 2, 2006 deadline for amending pleadings. ConnecTel argues the June 2 deadline—the post-*Markman* deadline for amending pleadings—is intended to allow the parties to narrow their claims as they move closer to trial, not add claims as Cisco did.

ConnecTel is generally correct—the post-*Markman* deadline for amending pleadings is intended by the Court to allow the parties to narrow their claims in preparation for trial. Generally, to add claims at such a late date requires the Court's leave. Although Cisco did not seek the Court's leave to add these additional claims, the Court denies ConnecTel's motion because had Cisco sought leave, the Court would have granted it.

*Explanation for failure to meet the deadline*

Two groups of facts form the basis of Cisco's unclean hands claim and unfair business

3

practices claim—ConnecTel's conduct in prior litigation and this litigation and ConnecTel's conduct before the PTO. ConnecTel argues that since Cisco has known the underlying facts that form the basis of these claims for quite some time, Cisco has no excuse for its failure to meet the deadline. But some of the most important facts that form the basis of the claims only just occurred—ConnecTel's withdrawal of its claims based on the H.323 gatekeeper products and infringement of the '594 and '404 patents. It is these facts that Cisco contends give weight to its argument that ConnecTel has acted with unclean hands.

*Importance of what the Court is excluding*

Like its other declaratory judgment claims for invalidity or unenforceability of the '307 and '641 patents, Cisco's unclean-hands claim would render those patents unenforceable. But unlike its other declaratory judgment claims, Cisco's unclean-hands claim also relies on the litigation history of the '594 and '404 patents. Thus, the unclean hands claim is important to Cisco in this action. Similarly, the unfair business practices claim is also important. Through that claim, Cisco seeks "disgorgement of ConnecTel's ill-gotten gains, including investments ConnecTel has attracted through its inappropriate conduct." Cisco does not seek such relief through its other counterclaims.

*Potential prejudice*

ConnecTel's prejudice from the additional claims is minimal. Since Cisco filed its first answer, Cisco has consistently asserted the defense that ConnecTel's unclean hands prevents its enforcement of the patents. Now, in addition to asserting that as a defense, Cisco seeks a declaratory judgment on the issue. Similarly, the issue of ConnecTel's conduct before the PTO has been in this case since Cisco filed its first answer and sought declaratory judgments that all four asserted patents are unenforceable on the grounds of inequitable conduct. Thus, the factual and legal bases for

Cisco's unclean-hands claim have been at issue in this case since the beginning. Cisco's counterclaim that ConnecTel has committed unfair business practices under California law is based on the same facts that support its unclean-hands claim. Thus, the factual bases for this claim have also been at issue since Cisco first answered. Because these issues have been in the case since the beginning—though not in their present form—ConnecTel's prejudice is minimal.

*Availability of a continuance*

This case is set for trial in just a few weeks. Although ConnecTel's likely prejudice is minimal, the Court is willing to entertain a motion for a brief continuance if ConnecTel can show a continuance is necessary to cure any such prejudice.

## CONCLUSION

As stated, the Court **GRANTS** in part and **DENIES** in part ConnecTel's motion to compel in accordance with the Court's oral rulings. For the reasons explained above, the Court **DENIES** ConnecTel's motion to strike.

**So ORDERED and SIGNED this 6th day of July, 2006.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**